Gordon R. SCHILLING,
Plaintiff–Appellant,

v.

Edward L. WHITE and Robert L. Massie, Defendants–Appellees.

No. 94–3097.

United States Court of Appeals,
Sixth Circuit.

Submitted Nov. 15, 1994.

Decided July 6, 1995.

Gordon R. Schilling (briefed), Columbus, OH, pro se.

Joshua T. Cox (briefed), Office of Atty. Gen., Columbus, OH, for defendants-appellees.

Before: MARTIN and BOGGS, Circuit Judges; and BELL, District Judge.[*]

BOGGS, Circuit Judge.

Gordon R. Schilling, proceeding *pro se*, appeals[1] from the district court's dismissal without prejudice of his civil rights action under 42 U.S.C. § 1983. For the reasons set forth below, we affirm.

## I

In March 1988, Schilling was involved in a car accident. Officers Edward L. White and Robert L. Massie of the Ohio Highway Patrol responded. Schilling claims that while Officer White was gathering information and speaking to Schilling, Massie began to search his car. Massie found what he thought were drugs, so he searched Schilling. Schilling was arrested and charged with being under

---

[*] The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

1. Schilling was late in appealing, but because the record of appeal was apparently lost, another panel of this court excused the error. (Order in Case No. 93–4178, Dec. 15, 1993).

the influence of drugs. On February 3, 1992, Schilling filed a § 1983 suit against White and Massie, seeking monetary damages as compensation for "the violation of his constitutional rights." Schilling's complaint did not specify whether he was ultimately convicted of driving under the influence of drugs.

In an order dated February 3, 1992, the district court stated its intention to dismiss without prejudice Schilling's complaint, pursuant to *Hadley v. Werner*, 753 F.2d 514 (6th Cir.1985), unless "plaintiff amends the complaint to allege that he suffered no criminal conviction as a result of the alleged illegal ... search and seizure or that such conviction had been set aside...." Schilling responded by admitting that he had pleaded guilty to driving under the influence and had been unable to overturn the conviction. The district court dismissed his suit on June 11, 1992, because "under [*Hadley*], this case must be dismissed without prejudice until such time as [Schilling's] conviction is set aside."

## II

A decision by a district court to dismiss without prejudice will not be disturbed except for an abuse of discretion. *Craighead v. E.F. Hutton, Inc.*, 899 F.2d 485, 495 (6th Cir.1990). A court will find an abuse of discretion where it has a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Balani v. INS*, 669 F.2d 1157, 1160 (6th Cir.1982) (citations omitted). A court also abuses its discretion where it "improperly applies the law or uses an erroneous legal standard." *Gaston Drugs, Inc. v. Metropolitan Life Ins. Co.*, 823 F.2d 984, 988 (6th Cir.1987), *quoting Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.*, 753 F.2d 1354, 1356 (6th Cir.), *cert. dismissed*, 469 U.S. 1200, 105 S.Ct. 1155, 84 L.Ed.2d 309 (1985).

## III

In *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the Supreme Court first addressed the interplay between 42 U.S.C. § 1983 and habeas corpus.[2] The plaintiffs in *Preiser* were prisoners who alleged that they were unconstitutionally deprived of good-time credits and sought reinstatement of time due. Success in these claims would have resulted in their immediate or early release. The Court in *Preiser* concluded that when a prisoner seeks equitable relief that challenges the fact or duration of confinement, as opposed to the conditions of confinement, habeas corpus was the sole form of relief. Because a finding of a constitutional violation in a civil suit could be given preclusive effect in a later habeas corpus proceeding, prisoners could use § 1983 as an "end run" around the carefully-crafted exhaustion requirements of habeas. Thus, courts must treat such a § 1983 claim as a habeas corpus petition, subject to its exhaustion requirements.

Although one of Congress's specific goals in enacting 42 U.S.C. § 1983 was to provide a federal forum for claims arising from constitutional violations, this end was also often accomplished through habeas corpus review. Given the choice between allowing the absence of an exhaustion requirement in § 1983 to "swallow the rule" of exhaustion of habeas petitions, or making a *de facto* exception to § 1983 jurisdiction, the Court chose the latter.

In *Hadley v. Werner*, this Circuit extended *Preiser* beyond equitable relief to claims for monetary damages under § 1983. The *Hadley* court dismissed without prejudice an inmate's suit based on ineffective assistance of counsel, where he alleged that several state and local officials had structured Michigan's system for compensating state-appointed counsel in order to attract only incompetent attorneys. 753 F.2d at 515. The court found that "a necessary portion of his claim chal-

---

**2.** The habeas corpus statute authorizes a court to review the conviction "of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A prisoner who is in custody because his constitutional or statutory rights were violated may be entitled to sue under § 1983 because he has been deprived of his liberty by a person acting under color of law.

lenges the validity of Hadley's conviction," and "direct[ed] him to pursue relief through ... habeas corpus." *Id.* at 516.

The *Hadley* court added comity and federalism as additional policy justifications for its rule. The court cited the federalism considerations reflected in *Younger* abstention[3] along with the Congressional mandate that habeas be a state prisoner's exclusive federal remedy. *Id.* at 516. It adopted the First Circuit's rule that a federal court must "stay its hand where disposition of the damages action would involve a rule implying that a state conviction is or would be illegal." *Ibid.*, quoting *Guerro v. Mulhearn*, 498 F.2d 1249, 1252 (1st Cir.1974). Thus, the suit could be reinstated "if and when [a prisoner] establishes, through a petition for writ of habeas corpus, that he was denied effective assistance of counsel." *Hadley*, 753 F.2d at 516.

This Circuit further expanded the scope of *Hadley* in *Feaster v. Miksch*, 846 F.2d 21, 23 (6th Cir.1988), holding that "when disposition of a federal action for damages necessarily requires the resolution of issues that will determine the outcome of pending state criminal proceedings, *Younger* requires that the federal action not proceed." Unlike the plaintiffs in *Preiser* and *Hadley*, Feaster was not a prisoner, so habeas relief was unavailable. Feaster sued four police officers and a municipality for alleged Fourth Amendment violations arising from the execution of a search warrant. The court recognized that entertaining the case "would necessarily determine the same questions as to the validity of the search warrant," whereas staying the action would avoid federal court rulings "implying that a state conviction is *or would be* illegal." *Id.* at 22–23 (emphasis added in *Feaster* ), quoting *Hadley*, 753 F.2d at 516 (quoting *Guerro*, 498 F.2d at 1252). The court therefore stayed the federal suit pending completion of ongoing state criminal proceedings. *Feaster*, 846 F.2d at 24.

A close reading of *Feaster* reveals that it was a significant departure from *Hadley* and *Preiser*. Instead of stressing the exclusivity of the habeas remedy, the *Feaster* court interpreted *Hadley* as being premised upon "the need to avoid federal interference in ongoing state judicial proceedings that implicate vital state interests, including the state's interest in maintaining its system of criminal justice." *Feaster*, 846 F.2d at 23. The philosophically distinct doctrines in *Feaster* and *Hadley* both graft an exhaustion requirement onto § 1983 actions and, as with the rule in *Hadley*, "*Feaster* abstention" requires the exhaustion of state post-conviction relief. Even if there is no state litigation actually pending, "*Feaster* abstention" applies to potential litigation—hence the court's additional emphasis in the phrase from *Hadley*, "a rul-

---

3. In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Court overturned a district court's order enjoining a state district attorney from enforcing the California Criminal Syndicalism Act. The Court based its decision upon policy grounds rather than the Anti–Injunction Act, relying on:

> an even more vital consideration, the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. This, perhaps for lack of a better and clearer way to describe it, is referred to by many as "Our Federalism".... [This concept represents] a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect fed-

eral rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Id.* at 44, 91 S.Ct. at 750.

Since then, the Court has invoked *Younger* when abstaining from enjoining non-criminal state proceedings that implicate important state interests, *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), as well as state civil proceedings, *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). As a result, "*Younger* abstention" has come to mean the policy of discretionary non-interference in state court proceedings for reasons of comity and federalism. Thus, our Circuit has recognized that the relevant inquiry when considering abstaining under *Younger* is the nature and degree of the state's interest in its judicial proceedings, rather than whether a party is seeking injunctive relief or monetary damages. *Kelm v. Hyatt*, 44 F.3d 415, 419–21 (6th Cir.1995); *Feaster v. Miksch*, 846 F.2d 21, 23–24 (6th Cir.1988).

ing implying that a state conviction is *or would be* illegal." *Feaster*, 846 F.2d at 23.

More important for the resolution of this case, the court recognized in *Feaster* that Fourth Amendment claims must be treated differently than other constitutional violations. Because Fourth Amendment claims cannot be raised in a habeas petition, *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), there is less danger that a prisoner will use § 1983 to avoid the procedural requirements of habeas corpus, rendering the reasoning of *Hadley* inapposite. However, "*Feaster* abstention" is still appropriate where there remains the possibility of further state review of a conviction. Rather than dismissing Fourth Amendment claims raised under § 1983 by a convicted person, a federal court should stay the action pending resolution of the state proceedings.

Accordingly, this Circuit has repeatedly cited *Feaster* in holding that Fourth Amendment claims are exempt from *Hadley*'s "dismissal without prejudice" rule. *Lumpkin v. Wilkinson*, No. 93–4060, 1994 WL 105889, *1 (6th Cir. March 28, 1994) ("we conclude that the district court abused its discretion to the extent it dismissed [the] Fourth Amendment claim"); *Turner v. Leis*, No. 89–3877, 1990 WL 6950 (6th Cir. Feb. 1, 1990) (staying Fourth Amendment portion of suit); *Goddard v. Larsen*, No. 89–5612, 1989 WL 144341 (6th Cir. Nov. 30, 1989) (ordering a stay rather than dismissal of plaintiff's equitable claims); *Sherrills v. Kerek*, No. 88–4153, 1989 WL 34834, *1 (6th Cir. Apr. 4, 1989) ("we find the district court correctly dismissed without prejudice all claims under *Hadley* . . . except the fourth amendment issue"), *cert. denied*, 498 U.S. 1071, 111 S.Ct. 794, 112 L.Ed.2d 855 (1991); *Powell v. Gilbert*, No. 88–1067, 1988 WL 76542, *1 (6th Cir. July 22, 1988) ("*Hadley* did not control the resolution of plaintiff's fourth amendment claims").

A necessary consequence of this doctrine is that when the plaintiff has exhausted state remedies *and* has no possibility of habeas corpus (e.g., Fourth Amendment claims), a

federal court must entertain the § 1983 suit. *Carlson v. Zielinski*, Nos. 88–1846, 88–1883, 1989 WL 16139, *1 (6th Cir. Feb. 13, 1989) ("The claim regarding the validity of the search warrant . . . should have been stayed rather than dismissed without prejudice because the claim could not be the subject of a habeas corpus petition. . . ."). The district court below applied *Hadley* to Schilling's § 1983 action, but it failed to consider these subsequent decisions that both clarified and altered the rule in *Hadley* mandating dismissal without prejudice. Therefore, it would appear that Schilling's action would fall within this "Fourth Amendment exception" and that the district court should have heard the case.

### IV

■ However, a question remains whether the Fourth Amendment exception first enunciated in *Feaster* survives the Supreme Court's recent decision in *Heck v. Humphrey*, —— U.S. ——, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). We hold that it does not, and that any exception is no longer good law.

■ In *Heck v. Humphrey*, the Supreme Court altered a federal court's ability to hear a 42 U.S.C. § 1983 lawsuit arising from a person's conviction or confinement:[4]

[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Id.* at ——, 114 S.Ct. at 2372 (footnotes omitted).

*James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991).

---

4. Because the Supreme Court applied *Heck* to the litigants in that case, it also applies retroactively to cases pending when *Heck* was decided.

Unlike *Hadley* and *Preiser, Heck v. Humphrey* is not based solely on the need to preserve habeas corpus as the exclusive federal remedy. In fact, *Heck* applies as much to prisoners in custody (a habeas prerequisite) as to persons no longer incarcerated. In *Heck,* Justice Scalia did not depend solely upon the *dictum* in *Preiser* that "Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983." *Heck,* —— U.S. at ——, 114 S.Ct. at 2370, *quoting Preiser,* 411 U.S. at 490, 93 S.Ct. at 1836. Instead, he examined the common law of tort liability and concluded that proof of the illegality of a conviction is a necessary element of the § 1983 cause of action. Unless that conviction has been reversed, there has been no injury of constitutional proportions, and thus no § 1983 suit may exist. Put simply, the common-law-based rationale in *Heck* completely undercuts the reasoning reflected in *Hadley* and *Feaster,* and eliminates the exceptions carved out in those decisions.

Apparently, the Seventh Circuit continues to allow a Fourth Amendment exception to this rule. In an unpublished case, *Franklin v. Summers,* No. 93–2939, 1994 WL 585402 (7th Cir. Oct. 24, 1994), that court interpreted *Heck* as follows:

Franklin's brief ... dispute[s] the validity of the arrest. Claims under the fourth amendment do not impeach the validity of a conviction. An arrest without probable cause may be followed by a valid conviction; a proper arrest may lead to an invalid conviction. Thus it is not necessary to have a conviction set aside to pursue a claim under the fourth amendment.

*Id.* at *1.

The Seventh Circuit misreads *Heck.* The fact that a Fourth Amendment violation may not necessarily *cause* an illegal conviction does not lessen the requirement that a plaintiff show that a conviction was invalid as an element of *constitutional injury.* The Court explicitly foreclosed this line of reasoning in *Heck,* when it concluded that because an illegal seizure does not automatically render a conviction invalid, an illegal seizure does not alone create a injury compensable under § 1983:

[A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that ... result[ed] in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and discovery, and especially harmless error, such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful. In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury which, we hold today, does *not* encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned).

*Id.* at —— – —— n. 7, 114 S.Ct. at 2372–73 n. 7 (citations omitted). The language of *Heck* plainly refutes the argument that Fourth Amendment claims are exempted from the requirement that a conviction must be set aside as a precondition for this type of § 1983 suit.

## V

■ Schilling also contends that he is entitled to a federal forum to hear his constitutional claims. In *Goddard v. Larsen* and other cases, this Circuit has suggested that federal courts *must* provide a forum to police federal constitutional violations:

*Deakins* [*v. Monaghan,* 484 U.S. 193, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988)] mandates a stay rather than a dismissal of the plaintiff's monetary claims because these claims cannot be redressed in a criminal or habeas corpus proceeding where only equitable relief is available. *See Deakins,* 484 U.S. at 204 [108 S.Ct. at 530]; *Feaster,* 846 F.2d at 24; *cf. Watts,* 854 F.2d at 849. *Under these circumstances, the federal courts may not completely abdicate their jurisdiction over the plaintiff's civil case.*

*Goddard,* 1989 WL 144341, at *1 (emphasis added).

However, in *Withrow v. Williams,* Justice Scalia attacked the theory that "a federal forum must be afforded for every federal claim of a state criminal defendant." ——

U.S. ——, ——, 113 S.Ct. 1745, 1769, 123 L.Ed.2d 407 (1993) (Scalia, J., concurring). Such a notion is contrary to the very structure of the federal judiciary:

> It would be a strange constitution that regards state courts as second-rate instruments for the vindication of federal rights and yet makes no mandatory provision for lower federal courts (as our Constitution does not). And it would be an unworkable constitution that requires redetermination in federal courts of all issues of pervasive federal constitutional law that arise in state-court litigation.

*Id.* at ——, 113 S.Ct. at 1770. Moreover, if the Court can foreclose review of Fourth Amendment claims where a person's *liberty* is at stake, *see Stone v. Powell, supra,* it would be odd indeed to guarantee judicial review where a plaintiff is seeking only monetary compensation.

Thus, *Heck* makes clear that no cause of action exists until a conviction is legally eliminated:

> In another respect, however, our holding sweeps more broadly than the approach respondents had urged. We do not engraft an exhaustion requirement upon § 1983, *but rather deny the existence of a cause of action.* Even a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.

*Heck,* —— U.S. at ——, 114 S.Ct. at 2373 (emphasis added). Therefore, Schilling has not been denied a federal forum, but rather lacks a legitimate legal claim requiring adjudication.

### VI

■ Because Schilling has failed to show that his state conviction has been rendered invalid, his § 1983 action is dismissed.[5]

---

5. If Schilling is later able to have his conviction overturned or expunged, he may bring this cause of action. Because a § 1983 claim for relief does not exist until the conviction is set aside, the statute of limitations does not begin to run until this time. *See Franklin,* 1994 WL 585402, at *1.