Jimmy Ray WHITE, plaintiff,

v.

Michael PHILLIPS, defendant.

Civil Action No. 97–0626.

United States District Court,
W.D. Louisiana,
Alexandria Division.

Dec. 28, 1998.

Jimmy Ray White, Braithwaite, LA, pro se.

## RULING

LITTLE, Chief Judge.

Before this court is the magistrate's report recommending that we dismiss petitioner Jimmy Ray White's civil rights complaint as frivolous. The procedural posture of White's complaint poses a question of first impression in the Fifth Circuit: Does the "favorable termination" requirement announced in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) apply to petitioners such as White who have been released from prison? In light of the Supreme Court's disposition in the recent case of *Spencer v. Kemna,* 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), we hold that it does not. *Heck,* therefore, does not bar White's petition, and he may proceed with his case.

### I. *Background*

White alleges that while serving jail time at the City of Faith Halfway House, he was written up for intoxication and attempted escape.[1] Based on this report of misconduct, he was removed to the Winn Correctional Facility and placed in administrative segregation. He remained there for sixteen days without a hearing on his alleged misconduct in violation of Louisiana prison regulations.[2] White complains that when he did receive a hearing, the hearing officer, one Captain Glover, coerced him into accepting a guilty plea. More specifically, White alleges that Glover threatened to take away two full years of White's good time credits if White did not accept a guilty plea and lose 180 days of good time credits.

White wrote several prison officials to try and recover his good time credits based on his lengthy administrative detention and allegedly coerced guilty plea. White alleges that in response to one of his letters, Warden Michael Phillips told him that he could recover his good time credits if White could show that he was detained in administrative segregation without a hearing in violation of prison regulations; upon producing proof of that detention, however, Phillips allegedly refused to reinstate the credits because White had not properly appealed his guilty plea.

White filed the instant civil rights petition pursuant to 42 U.S.C. § 1983 on 27 March 1997 while still incarcerated, complaining

---

1. The record discloses neither the crime for which White was originally convicted nor how he came to reside in a halfway house rather than prison. These facts, however, are not relevant to the present inquiry.

2. *See* La.Admin.Code title 22, § 347(E) (Low Court Hearing) ("Hearings shall be held within seven days of the incident, excluding weekends and holidays."), § 349(A)(6) (Hearings of the Disciplinary Board) ("[T]he hearing must begin within 72 hours of placement in administrative segregation.") (1998).

that the coerced guilty plea and administrative detention deprived him of due process of law. We determined that because White's objection to his guilty plea challenged the deprivation of his good time credits, and thus the duration of White's confinement, White must first bring that complaint by habeas corpus. *See Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 1587, 137 L.Ed.2d 906 (1997); *Heck v. Humphrey,* 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *cf. Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (holding that if a suit challenges the fact or duration of confinement, proper vehicle for challenge is habeas corpus rather than § 1983). As such, we construed White's challenge to his guilty plea as a habeas petition. We then dismissed this habeas petition without prejudice for failure to exhaust state remedies and stayed White's § 1983 challenge to the administrative segregation until he pursued habeas relief.

Shortly thereafter, White finished his sentence and was released from prison. The magistrate reopened the § 1983 case at White's request and issued a report and recommendation dismissing White's complaint as frivolous pursuant to *Heck v. Humphrey* because White had not successfully overturned his guilty plea on direct appeal or habeas corpus review.

## II. *Analysis*

Our analysis in this case turns on the proper understanding of *Heck.* In *Heck,* a state prisoner filed a § 1983 suit in federal district court seeking damages for allegedly unconstitutional police actions while his direct appeal was still pending. *See Heck,* 512 U.S. at 479, 114 S.Ct. 2364. The full Court joined Justice Scalia's opinion announcing a "favorable termination" prerequisite to bringing a § 1983 action that might challenge the fact or duration of a prisoner's confinement:

[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Heck,* 512 U.S. at 486–87, 114 S.Ct. 2364. The Justices split, however, on the proper reasoning to reach that conclusion.

Justice Scalia, joined by four other Justices, grounded his opinion on a comparison to the common law.[3] He found that a § 1983 suit challenging the fact or duration of a prisoner's confinement most closely resembles the common law tort of false imprisonment. *See id.* at 484, 114 S.Ct. 2364. The common law required plaintiffs to show the "termination of the prior criminal conviction in favor of the accused" as part of the prima facie case of false imprisonment. *Id.* (citations omitted). So informed by common law, Justice Scalia determined that a necessary element to a § 1983 claim challenging the fact or duration of a prisoner's confinement included showing a favorable termination to either appellate or habeas corpus review.

Justice Souter filed a concurring opinion in which three other Justices joined disputing the reasoning by which the majority reached its conclusion. Justice Souter found the appeal to common law principles both unnecessary and incompatible with the principles of § 1983 under these circumstances. *See id.* at 492, 114 S.Ct. 2364. He viewed the favorable termination requirement as a pragmatic solution to a problem posed by the intersection of habeas corpus and § 1983 jurisprudence. *See id.* at 497, 114 S.Ct. 2364. Were prisoners allowed to pursue immediately § 1983 claims challenging the fact or duration of a prisoner's confinement, a prisoner might obtain a favorable judgment in the civil action and attempt to use it for estoppel

**3.** The Supreme Court has often looked to common law principles existing when Congress passed § 1983 to guide its interpretation of that vague statute. *See Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (borrowing common law damages principles); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (borrowing common law immunity principles).

or res judicata effect in a habeas corpus review. A prisoner could thus end-run the habeas corpus statute and use a civil damages suit to overturn a criminal conviction. The favorable termination requirement forecloses this possibility by requiring a prisoner to pursue habeas relief before filing a civil rights claim. In Justice Souter's view, *Heck* is an instrumental solution that preserves the integrity of habeas corpus review and criminal convictions rather than a necessary element of every § 1983 claim challenging the fact or duration of a prisoner's confinement. *See id.*

As noted, the nature of the favorable termination requirement determines the outcome of our present inquiry. If the favorable termination requirement is an element of the prima facie case of any § 1983 case challenging the fact or duration of a sentence, as Justice Scalia's common law analysis would have it, then the status of the petitioner, whether free or detained, matters not at all. Justice Scalia stated as much in a footnote: "We think the principle barring collateral attacks-a longstanding and deeply rooted feature of both the common law and our own jurisprudence-is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated." *Heck*, 512 U.S. at 490 n. 10, 114 S.Ct. 2364.

If, however, Justice Souter is correct that the favorable outcome requirement merely preserves the integrity of habeas corpus, then a petitioner's status is highly relevant. A released petitioner such as White can never challenge an alleged constitutional injury on direct appeal, and almost certainly can never challenge such an injury through habeas corpus.[4] Without a need to protect the underlying criminal conviction or subsequent habeas proceedings from the potential estoppel effect of a § 1983 judgment, there is no need for the favorable outcome requirement. A released prisoner such as White should be allowed to bring his claim without the burden of that prerequisite.

The few courts that addressed this issue after *Heck* followed the dicta in footnote ten of Justice Scalia's majority position: *Heck* should apply regardless of the petitioner's status. The Sixth Circuit held in *Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir.1995) that "*Heck* applies as much to prisoners in custody (a habeas prerequisite) as to persons no longer incarcerated." *Id.* at 1086. The Seventh Circuit followed suit in *Anderson v. County of Montgomery*, 111 F.3d 494, 499 (7th Cir.1997). It acknowledged the reasoning of Justice Souter's concurrence, but declined to follow it, noting that "a concurrence is not the law, and the majority specifically rejected the notion" that *Heck* should not apply to released prisoners. *Id.* at 499, 114 S.Ct. 2364. The court went on to agree with *Schilling* that the majority's common law rationale in *Heck* precluded any consideration of the petitioners status. *See id.* Following the reasoning of these cases, the recommendation of the magistrate would be correct.[5]

---

4. That possibility has largely been foreclosed by the Court's recent opinion in *Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). There the Court held that a prisoner released before resolution of his habeas petition can only avoid dismissal for mootness by showing injury-in-fact from his unconstitutional conviction sufficient to satisfy the Court's Article III standing jurisprudence. *See id.* 118 S.Ct. at 986. As we shall see below, losing a § 1983 claim for failure to satisfy the favorable outcome requirement would not constitute such an injury in the eyes of the Court.

5. We are not certain that Justice Scalia's dicta in footnote ten of *Heck* commands the result reached by these courts, for that result is not entirely consistent with the rest of his opinion.
   First, the same common law rule that justifies this outcome rests on the very concern for collateral attack underlying Justice Souter's concur-

rence. Justice Scalia noted that requiring a prisoner to demonstrate that his conviction had been expunged prior to bringing a tort suit "precludes the possibility of the claimant [sic] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against ... collateral attack on the conviction through the vehicle of a civil suit." *Heck*, 512 U.S. at 484, 114 S.Ct. 2364 (internal quotations and citations omitted, *sic* in original). He concluded,

> We think the hoary principle that *civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions* that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.

*Id.* at 485, 114 S.Ct. 2364 (emphasis added). The tort principles on which Justice Scalia relies

Justice Souter's minority position, however, became the majority last term in *Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). Spencer had filed a habeas corpus challenge to an order revoking his parole, but completed his sentence before the disposition of his case. In deciding whether the fact of Spencer's release from prison mooted his habeas petition, the Court, again in an opinion by Justice Scalia, confronted the effect of *Heck*'s favorable outcome requirement on a released prisoner. Spencer argued that the Court could not moot his habeas petition because *Heck* required him to show habeas relief as a prerequisite to a § 1983 action, whether released from prison or not. *See id.* 118 S.Ct. at 988.[6]

Justice Scalia brushed aside this argument as a "great non sequitur, unless one believes (as we do not) that a § 1983 action for damages must always and everywhere be available." *Id.*[7] Justice Souter, however, in another concurring opinion, used Spencer's argument to revisit the rationale for *Heck*'s favorable outcome requirement. Justice Souter disputed Spencer's underlying assumption that *Heck* required him to litigate his habeas corpus claim whether incarcerated or not. "*Heck* did not hold that a released prisoner in Spencer's circumstances is out of court on a § 1983 claim, and for reasons explained in my *Heck* concurrence, it would be unsound to read either *Heck* or

the habeas statute as requiring any such result." *Id.* 118 S.Ct. at 989 (Souter, J., concurring). He recast *Heck* as a "simple way to avoid collisions at the intersection of habeas and § 1983." *Id.* He concluded that

> [t]he better view, then, is that a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement.... After a prisoner's release from custody, the habeas statute and its exhaustion requirement have nothing to do with his right to any relief.

*Id.* 118 S.Ct. at 990. Justices O'Connor, Ginsburg, and Breyer joined Justice Souter's opinion, and Justice Stevens adopted Justice Souter's position in dissent. *See id.* at 992 n. 8 (Stevens, J., dissenting) ("[I]t is perfectly clear, as Justice Souter explains, that he may bring an action under § 1983."). The current majority position of the Supreme Court thus limits the scope of *Heck*'s favorable outcome requirement to detained prisoners. *See Zupan v. Brown*, 5 F.Supp.2d 792, 795–97 (N.D.Cal.1998) ("[I]t appears that Justice Souter's reading of *Heck* is approved by a majority of the Court."). *But see Figueroa v. Rivera*, 147 F.3d 77, 81 n. 3 (1st Cir.1998) (declining to follow the new majority position).[8] Following this majority position, we

---

are themselves grounded in the very principles relied upon by Justice Souter.

Second, as noted above, a released prisoner would almost never satisfy the inquiry preliminary to applying *Heck:* that the § 1983 suit challenges the fact or duration of a sentence. If the prisoner is released, only under the very limited circumstances outlined in *Spencer* could a petitioner challenge his conviction with a civil judgment. A practical application of step one, then, leads to a conclusion contrary to the dicta in footnote ten. Despite these apparent inconsistencies, no court attempted to distinguish the dicta in footnote ten. *Spencer*, however, settles the question.

**6.** This was Spencer's final argument against the mootness of his habeas petition. The Court had already rebuffed his contention that a court should presume adverse collateral consequences arising from a conviction (or parole revocation in Spencer's case) sufficient to grant Article III standing. *See Spencer*, 118 S.Ct. at 986. The Court then rejected Spencer's contentions that he

in fact suffered adverse collateral consequences sufficient to grant him standing to pursue his habeas petition. Specifically, neither the possibility of prejudice in future parole or sentencing proceedings, nor the potential for impeachment as a witness or defendant, satisfied the Court's collateral consequences inquiry. *See id.* at 987.

**7.** Justice Scalia also left open the possibility in this passage that a released prisoner might bring a claim that does not necessarily imply the invalidity of the revocation. *See id.* He did not go so far, however, as to acknowledge that a released prisoner might *never* be able to challenge the validity of a sentence.

**8.** The plaintiff in *Figueroa* died with his habeas corpus petition unresolved; his family then attempted to continue his § 1983 suit. The First Circuit panel declined to follow the new majority position on *Heck* because "[t]he Court ... has admonished the lower federal courts to follow its directly applicable precedent, even if that precedent appears weakened by pronouncements in its

hold that White may proceed with his civil rights complaint even though he has not demonstrated that the adverse determination of his good time credits has been overturned on appeal or collateral attack.

This result better accounts for the concern with fundamental fairness embodied in § 1983. A simpler example illustrates this point. What if the prison had detained White two months beyond his prison term without a hearing, but released him before a court could pass on his habeas petition? If *Heck* were an absolute bar to a civil suit absent the favorable outcome showing, White would have no recourse against the state prison in a neutral federal forum for the deprivation of his liberty. Such a result patently contradicts § 1983's clear goal of providing a neutral federal forum to air constitutional grievances. *Heck's* favorable outcome requirement, then, should not render White's claims frivolous merely because he has been released from prison.[9] He may proceed with his § 1983 claim.

### III. *Conclusion*

For the foregoing reasons, we decline to follow the magistrate's recommendation dismissing White's claims as frivolous under *Heck v.. Humphrey.* Defendant shall answer or otherwise respond to White's complaint within 30 days.

---

subsequent decisions, and to leave to the Court the prerogative of overruling its own decisions. We obey this admonition." *Figueroa,* 147 F.3d at 81 n. 8 (quoting *Agostini v. Felton,* 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997)). We respectfully disagree with the First Circuit panel's opinion, and think it rests on two incorrect assumptions. It first assumes that *Heck* is "directly applicable precedent." In the strictest sense, it is not; *Heck* only hints at an answer to the question before us in dicta. Second, following *Spencer's* interpretation of *Heck's* ruling in no way undercuts the validity of that ruling. *Spenc-*

*er* simply clarified the logic underlying *Heck's* unchanged holding, and in no way implies that *Heck* is no longer good law. Finally, we note that to the extent Justice Souter's opinion in *Spencer* is dicta because announced in a concurrence, we find it more persuasive than the dicta in footnote ten of *Heck. See supra* n. 5.

9. We express no opinion at this juncture on White's ability to maintain a suit based on the allegations in his complaint. We address only the narrow question of the application of *Heck* to White's lawsuit.