**David Michael SCHWARTZ, Plaintiff,**

**v.**

**CITY OF PHOENIX, a municipal corporation, Stefani McMichael, Michael Sechez, Stuart Sterling, David Lundberg, Defendants.**

**No. CIV96–1727–PHX–ROS.**

United States District Court, D. Arizona.

Jan. 7, 2000.

Edward Stanley Coleman, Edward S Coleman PLC, Las Vegas, NV, Timothy H Barnes, Barnes & Lassiter PC, Mesa, AZ, for David Michael Schwartz, plaintiff.

David Michael Schwartz, Las Vegas, NV, pro se.

William R Jones, Jr, Jones Skelton & Hochuli PLC, Phoenix, AZ, for Phoenix, City of, Steffani McMichael, Michael Sechez, Stuart Sterling, David Lundberg, defendants.

## ORDER

SILVER, District Judge.

On July 24, 1996, Plaintiff filed a Complaint alleging that Defendants, the City of Phoenix and four of its police officers, violated his constitutional rights when they obtained and executed two search warrants, seized property belonging to Plaintiff, and failed to return the property to Plaintiff. By Order of March 31, 1999, as amended by Order of April 8, 1999, the Court granted Defendants' Motion for Summary Judgment in part. The Motion was granted in favor of Defendant City of Phoenix on all of Plaintiff's federal claims (the First, Fourth, and Fifth Amendment claims), and in favor of the individual Defendants on the claims of taking in violation of the Fifth Amendment and retaliation in violation of the First Amendment.

The text of the Order indicated that the Court would grant the individual Defendants' request for summary judgment on the Fourth Amendment claim in part and deny it in part, and indicated that an opinion setting forth the Court's findings of fact and conclusions of law with respect to the Fourth Amendment claim would be forthcoming. On the order line, instead of explaining which portion of the request for summary judgment on the Fourth Amendment claim was granted and which was denied, the Court denied the individual Defendants' Motion for Summary Judgment on the Fourth Amendment claim, as well as denying summary judgment on the supplemental state claims of negligence and conversion. In the first portion of the current Order, the Court sets forth its findings of fact and conclusions of law regarding the Fourth Amendment claim, grants the claim in part, and denies it in part. In the second portion of the Order,

the Court addresses the issue of the deadline for discovery.

## I. Fourth Amendment Claim of Unreasonable Seizure

By Order entered in January 1998 denying Defendants' initial summary judgment motion, the Court clarified its prior December 1996 Order, explaining that "Plaintiff's Fourth Amendment claim alleging the unlawful seizure of his property is still pending." (Order at 21, Dkt. # 60). However, some confusion apparently remained about the factual basis of Plaintiff's illegal seizure claim. In their second motion for summary judgment, Defendants focus their arguments regarding this claim on three issues: whether probable cause existed to issue the warrants, whether the warrants described the items to be seized with sufficient particularity, and whether the items seized fell within the scope of the warrants. (Defendants' Second Mot. for Summ.J. at 6–8, dkt. # 79).

In his response, Plaintiff does not address the issue of probable cause. With respect to the allegedly illegal August 1994 search and seizure at 1040 East Indian School Road, Plaintiff argues only that some of the property seized was beyond the scope of the warrant. With respect to the allegedly illegal September 1994 search of the storage locker, Plaintiff argues both that the warrant was facially

overbroad and that some of the property seized was beyond the scope of the warrant. Defendants addressed Plaintiff's arguments in their reply. Therefore, the Court will base its analysis upon the Fourth Amendment claims as stated by Plaintiff.

### A. Whether Claims are Barred by *Heck v. Humphrey*

■ Plaintiff cannot maintain a section 1983 action to recover damages for "harm caused by actions whose unlawfulness would render [his] conviction or sentence invalid" because the conviction and sentence have not been reversed, expunged, declared invalid by a state tribunal, or called into question upon issuance of a writ of habeas corpus by a federal court. *See Heck v. Humphrey*, 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Plaintiff can seek damages for an allegedly unreasonable search and seizure that did not produce evidence introduced at his criminal trial.[1] *See id.* at 487 n. 7, 114 S.Ct. 2364. Moreover, due to the existence of doctrines including independent source, inevitable discovery, and harmless error, a successful challenge by Plaintiff to the legality of a search and seizure that did produce evidence admitted at his criminal trial " 'would not *necessarily* imply that the plaintiff's conviction was unlawful.' "[2] *Trimble v. City of Santa*

1. The relevant text of *Heck* followed by the footnote reads:

But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed ...
    7. For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery ... and especially harmless error ... such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful. In order to recover compensatory damages, however, the § 1983 plaintiff

must prove not only that the search was unlawful, but that it caused him actual, compensable injury ... which, we hold today, does not encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned).
512 U.S. at 487 & n. 7, 114 S.Ct. 2364 (citations omitted).

2. The Ninth Circuit has not yet had an opportunity to fully interpret footnote seven, but other circuit courts have divergent interpretations of the footnote's meaning. In *Trimble*, 49 F.3d at 585, the Ninth Circuit cited the portion of footnote seven set forth above in the text, but then determined that the plaintiff's Fourth Amendment claim had to be dismissed because the plaintiff had not alleged an actual compensable injury caused by the purported illegal search other than his conviction and sentence. Therefore, the Ninth

*Rosa,* 49 F.3d 583, 585 (9th Cir.1995) (quoting *Heck,* 512 U.S. at 487 n. 7, 114 S.Ct. 2364). However, Plaintiff must establish that he has sustained actual, compensable injury other than the injury of conviction and imprisonment. *Heck,* 512 U.S. at 487, 114 S.Ct. 2364.

In his verified Complaint,[3] Plaintiff declares that none of the property seized during the allegedly illegal August 2, 1994 search and seizure at 1040 East Indian School Road was introduced in evidence at his subsequent trials. (*See* Compl. at ¶ 29). Defendants do not dispute Plaintiff's declaration. Because no evidence from this search was used against Plaintiff, the instant action for damages resulting from the allegedly illegal search of the Indian School Road property would not render his conviction invalid. *See Heck,* 512 U.S. at 487 n. 7, 114 S.Ct. 2364. Accordingly, *Heck* does not bar the section

Circuit was not required to determine whether the evidence resulting from the purported search impacted the validity of the conviction. Because the Ninth Circuit did not engage in this inquiry, it is unclear whether the Ninth Circuit interprets footnote seven as creating an automatic exception to the bar of *Heck* for claims alleging violations of the Fourth Amendment, or as requiring analysis of whether the underlying conviction would remain valid absent the challenged evidence. Moreover, because the Ninth Circuit analyzed the plaintiff's Fourth Amendment claims separately from his Fifth and Sixth Amendment claims, it is unclear whether the court considers the analysis required by footnote seven applicable to constitutional claims other than Fourth Amendment claims, i.e., it is unclear whether the Ninth Circuit would require district courts hearing § 1983 actions to apply doctrines such as harmless error and independent source to determine the validity of convictions based on evidence challenged on Fifth or Sixth Amendment grounds.

Relying on the same portion of footnote 7 discussed in *Trimble,* the Eleventh Circuit concluded that the bar of *Heck* did not apply to a § 1983 suit challenging a search on Fourth Amendment grounds. *See Datz v. Kilgore,* 51 F.3d 252, 253 n. 1 (11th Cir.1995). In concluding that *Heck* did not apply, the Eleventh Circuit did not evaluate the impact of the § 1983 action on the underlying criminal convictions. *See id.* Rather, the Eleventh Circuit expressly concluded that *Heck* is not a bar because a conviction based on evidence offered in violation of the Fourth Amendment *"might* still be valid" due to doctrines such as inevitable discovery. *Datz,* 51 F.3d at 253 n. 1 (emphasis added). This suggests that the Eleventh Circuit interprets footnote seven of *Heck* as creating an automatic exception to the bar of *Heck* for all claims alleging violations of the Fourth Amendment

In sharp contrast, in *Schilling v. White,* 58 F.3d 1081, 1085–86 (6th Cir.1995), the Sixth Circuit construed *Heck* as barring a § 1983 suit by a convicted person challenging a search on Fourth Amendment grounds. The Sixth Circuit concluded that, without exception, a § 1983 claimant must "show that a conviction was invalid as an element of constitutional injury." *Schilling,* 58 F.3d at 1086. The Sixth Circuit interpreted footnote 7 to mean that "because an illegal seizure does not *automatically* render a conviction invalid, an illegal seizure does not alone create a[n] injury compensable under § 1983." *Id.* (emphasis added).

This Court interprets footnote 7 of *Heck* and the accompanying text as providing one example of when a § 1983 action might proceed because the allegations of a constitutional violation do not "necessarily" invalidate the conviction. *Heck,* 512 U.S. at 487 & n. 7, 114 S.Ct. 2364. The exception to the bar of *Heck* set forth in footnote 7 is not limited solely to Fourth Amendment claims, but may exist for other constitutional challenges as well. For example, harmless error analysis may also apply to Fifth Amendment claims, as illustrated by the Supreme Court's citation in footnote 7 of *Heck* to *Arizona v. Fulminante,* 499 U.S. 279, 307–308, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) in which it held that the doctrine of harmless error can apply to the admission of a coerced confession under the Fifth Amendment. Consequently, a plaintiff convicted based upon an unconstitutionally coerced confession admitted into evidence at trial may, if the admission was harmless error, properly bring a § 1983 action for the Fifth Amendment violation if he or she sustained damages, because a successful suit under § 1983 would not imply the invalidity of the conviction. The analysis of whether the *Heck* bar applies depends not on the constitutional claim alleged, but on whether the claim, if successful, would invalidate the underlying criminal conviction. This determination must be made on a case-by-case basis.

**3.** A verified Complaint is treated as an opposing affidavit to the extent it is based on personal knowledge and contains facts admissible in evidence. *See Schroeder v. McDonald,* 55 F.3d 454, 460 (9th Cir.1995).

1983 claims pertaining to the search of the Indian School Road property.

■ Plaintiff further declares that the police seized many items during the allegedly illegal September 16, 1994 search of the storage locker, but only one set of items, dildos, were subsequently introduced as evidence via photograph in his felony criminal trial. (*See* Compl. at ¶ 29). Plaintiff claims that this seizure was illegal on two bases. First, he claims, the seizure was the product of a facially overbroad warrant. This claim, if proven, would likely mean that the dildos should have been suppressed as the product of an illegal search. *See United States v. Spilotro*, 800 F.2d 959, 964, 968 (9th Cir.1986); *United States v. Cardwell*, 680 F.2d 75, 78–79 (9th Cir.1982). Thus, this claim raises the question of whether the *Heck* bar applies.

In his response, Plaintiff attempts to avoid application of *Heck* by arguing that the dildos admitted into evidence via a photograph were irrelevant to his criminal convictions. Plaintiff was convicted of four misdemeanor charges as well as felony charges for enticement, operating a house of prostitution, and conducting an illegal enterprise. (Schwartz Dep. at pp. 5, 19, Exh. D. to Defs.' Stmt. of Facts in support of First Mot. for Summ.J. (DSOF1), dkt. # 39). Plaintiff argues that the other evidence admitted at his trial provided sufficient grounds for his convictions, including testimony of two former employees, tape recordings of conversations between Plaintiff and undercover police officer McMichael, videos taped at Plaintiff's business by undercover police officers Sterling and Sechez, and the testimony of these three undercover police officers.[4] (Pl.'s Resp. at 9). In his Complaint, Plaintiff alleges that the video taped by Sterling shows a nude "model masturbati[ing] herself with a 'dildo'", and the video taped by Sechez shows "one ... [nude wom[e]n] us[ing] a dildo on the other." (Compl. at ¶¶ 15, 18). Due to the independent evidence, particularly the

videos and the officers' testimony, the dildos admitted into evidence were not necessary to Plaintiff's conviction. Thus the bar of *Heck* does not apply to Plaintiff's claim of illegal seizure due to a facially overbroad warrant. *See Heck*, 512 U.S. at 486–87, 114 S.Ct. 2364.

Plaintiff also argues that the seizure of items from the storage locker was illegal because, even if the warrant was not overbroad, the police officers executing the warrant exceeded its scope by seizing items outside the warrant's terms. Plaintiff does not claim that seizure of the dildos, the only evidence from the storage area that was admitted at trial, exceeded the scope of the warrant. Because this claim pertains only to seized property that was not utilized at trial, the bar of *Heck* does not apply to the claim of illegal seizure exceeding the scope of the warrant.

In sum, *Heck* does not bar Plaintiff's § 1983 Fourth Amendment claims alleging illegal searches of both the Indian School Road property and the storage locker.

**B. Whether Genuine Issues of Fact Remain Regarding the Legality of the Searches and Seizures**

Plaintiff challenges the search and seizure of items at the Indian School Road property on the ground that certain items seized were not within the scope of the search warrant. The warrant authorized seizure of the following:

1. Any and all alcoholic beverages stored at this location for sale.

2. Any and all currency which by its storage appears to be related to the alcohol that is being sold.

3. Any and all bills or paperwork [t]hat tend to show ownership, occupancy of the listed premises.

4. Any and all receipts for the purchase of alcoholic beverages.

---

**4.** Plaintiff does not offer an affidavit or other evidence to establish the truth of his assertion that this other evidence was admitted at his

criminal trial. However, Defendants do not dispute the introduction of this evidence.

5. Any and all adult movies or equipment used to facilitate the showing of these adult movies.

(Search Warrant attached as part of Exh. 1 to Notice of Filing Executed Warrants, Dkt. # 94). The warrant further stated that the listed items would constitute evidence tending to show that Schwartz had committed the offenses of selling alcohol without a state liquor license and violating zoning ordinances governing the running of an "adult", i.e., pornographic, theater. (*Id.*)

■ Plaintiff argues that the warrant authorized seizure of only the "adult" video tapes totaling in the range of twenty to thirty of the approximately 130 video tapes seized. He adds that many of the tapes were clearly marked "Barney," "Sesame Street," etc. Plaintiff's argument fails because the police officers conducting the search were not required to rely on the label on the video tape to determine its content or to view every video tape in entirety on the premises before seizing it. The video tapes fall within the scope of the warrant provision authorizing seizure of adult movies.

■ Plaintiff further argues that the warrant provision authorizing seizure of "equipment used to facilitate the showing of these adult movies" did not encompass seizure of the three camcorders, electronic equipment used to make movies rather than to show them. Defendants respond that the affidavit upon which the warrant is based establishes that patrons of Plaintiffs' business were allowed to record films that could be classified as "adult" and thus the seizure was within the scope of the warrant as construed by reference to the affidavit. An affidavit may supply the particularity required of a search warrant if the affidavit accompanies the warrant and is expressly incorporated therein. *United States v. McGrew*, 122 F.3d 847, 849 (9th Cir.1997). Plaintiff does not challenge Defendants' reliance on the affidavit; rather, he argues that, even when construed in conjunction with the affidavit, the warrant

does not authorize seizure of the camcorders.

The affidavit states that two undercover officers paid for "nude photo shoot[s]" of women employed by Plaintiff. The term "photo shoot" suggests photography but is broad enough to encompass video recording. Taken together with the information in the affidavit, the warrant phrase "equipment used to facilitate the showing of these adult movies" is broad enough to encompass the camcorders because equipment that may have been used to make adult movies helps "facilitate the showing of these ... movies." Seizure of the camcorders was proper.

■ Plaintiff also argues that the warrant language authorizing seizure of adult movies did not authorize the seizure of two other items listed on the report: "photos [of] nude woman 'Bobbi'" and "stack of photos of women." Defendants respond that the adult theater zoning code ordinance set forth in the affidavit prohibits projecting on a screen for exhibition photos depicting women engaged in sexual activities or depicting "specified anatomical areas" of women. Defendants also note, as a general matter, that, during the course of a legal search, officers may seize items in plain view other than those listed in the warrant if the incriminatory nature of the items is immediately apparent to the officers. *United States v. Hudson*, 100 F.3d 1409, 1420 (9th Cir.1996), *cert. denied*, 522 U.S. 939, 118 S.Ct. 353, 139 L.Ed.2d 274 (1997). In a search for "adult movies or equipment used to facilitate the showing of these adult movies," the photograph of a nude woman is incriminatory in nature because it is additional evidence of the availability of pornographic material for exhibition in violation of the adult theater zoning code. However, a genuine issue of material fact exists with respect to the "stack of photos of women" because the record does not contain information about the content of these photographs and thus the Court cannot determine whether the photos were of an "incrimina-

tory nature ... immediately apparent" for purposes of the plain view exception to the warrant requirement. *Id.*

Plaintiff proceeds to challenge the search and seizure of items at the storage locker on the ground that the warrant was facially overbroad. The warrant authorized seizure of the following:

1. Any paperwork consisting of bills, applications, diaries of business transactions which tend to show the conducting of an illegal enterprise.

2. Any video tapes which may contain sexual conduct between female employees and customers of David Schwartz.

(Search Warrant attached as part of Exh. 2 to Notice of Filing Executed Warrants, Dkt. # 94). The warrant further states that the listed items would constitute evidence of the offense of "[t]he illegal control of an enterprise."

Once again, Defendants rely on the affidavit on which the warrant is based to supply the particularity missing from the face of the warrant and Plaintiff does not challenge Defendants' ability to do so. The affidavit provides, in relevant part:

Your affiant made contact with the resident of [1040 East Indian School Road] in an undercover capacity and found that the business was a house of prostitution. During the daytime hours customers were coming into the location and paying to video tape females who worked there and prostitution was taking place during the taping. The resident and person managing the business was found to be David Schwartz, as described, and working there with him was Lisa Hartley, as described. Undercover detectives went into the location and video taped female employees of David Schwartz and an act of prostitution was completed.

Witnesses advised through interviews that David Schwartz video taped and kept the tapes of several incidents where prostitution was performed.... [A] self proclaimed partner in the illegal enterprise ... advised that she was informed by Lisa Hartley and a friend of hers "John" that they had moved ... property from 1040 E. Indian School Road to a storage locker. The storage locker was found to be located at 5728 N. 67th Avenue.... The evidence was to be boxes that contained ... paperwork which would include bills, applications, and diaries of business transactions. There was also to be boxes containing video tapes which could contain sexual conduct between female employees and customers o[f] David Schwartz.

[After Schwartz attempted to retrieve property from the locker rented to Hartley], [t]he managers of the storage unit requested that your affiant advise Schwartz that he was not allowed to remove property from the unit without the presence of Lisa Hartley. While doing this David Schwartz stated to me that some of the property in the rented unit by Lisa Hartley was his property from his business at 1040 E. Indian School Rd.

(Aff. attached as part of Exh. 2 to Notice of Filing Executed Warrants, Dkt. # 94). This affidavit clearly establishes the nature of the "illegal enterprise" referenced in the warrant—a house of prostitution. Construed with the affidavit, the warrant is not facially overbroad because it authorizes seizure of a variety of records tending to show operation of a house of prostitution.

Plaintiff also argues that the officers executing this second warrant seized many items outside the warrant's scope. Plaintiff lists these items in his Response to Defendants' Motion for Summary Judgment at pages 8 and 9. The warrant provision authorizing seizure of "video tapes which may contain sexual conduct between female employees and customers of David Schwartz" encompasses item 67, "[b]ox containing numerous video tapes" and item 79, "8 mm video tapes." As stated above, the officers did not need to examine the content of the video tapes before seizing them—the fact that the items are tapes, along with the affidavit linking Schwartz to these tapes, is sufficient.

Most of the other seized items that, according to Plaintiff, fall outside the scope of the warrant are photographs, and many of them contain images of nude or partially nude women, men, or girls. Photographs depicting nudity, partial nudity, or genitalia are listed as item numbers 9, 26, 29, 33, 37, 39, and 58. Those items described merely as photographs, usually of women, or albums containing such photographs are numbers 2, 20, 23, 38, 39,[5] 47, 66, and 69. Other items listed are materials used to make or store photographs, including photo albums, a camera, and negatives, listed as item numbers 3, 12, 39, 41, 48, 59, and 66. The list also includes sexually-oriented magazines and newspapers and a "[s]exual [p]osition [h]andbook," specifically item numbers 8, 38, and 60. The final item Plaintiff challenges is simply described as "[t]hree posters."

As Defendant argues, the photographs depicting nudity, partial nudity, or genitalia, as well as item number 23, "[m]iscellaneous photos and model's personal information," were properly seized pursuant to the plain-view exception as incriminatory evidence that Schwartz was running a house of prostitution. *See Hudson,* 100 F.3d at 1420. The incriminatory nature is particularly clear given the information in the affidavit indicating that Schwartz allowed customers to video tape—photography is merely another means of recording visual images. Based on this information, the officers also appropriately seized the photography materials—albums, film, a camera, and negatives. The sexually-oriented magazines, newspapers, and handbook likewise constitute incriminatory information within plain view.

However, a genuine issue of material fact exists with respect to whether the police officers had the authority to seize the other photographs pursuant to the plain-view exception. As stated above in the analysis of the "stack of photos of

women" seized at the Indian School Road address, the record does not provide additional information about the content of these photographs and thus the Court cannot determine whether the photos were of an "incriminatory nature ... immediately apparent." *Id.* The same is true of the three posters seized.

■ The Defendant police officers argue that, to the extent genuine issues of material fact remain regarding the Fourth Amendment claim, they are entitled to qualified immunity for seizing the listed items. The officers are entitled to qualified immunity if a reasonable officer could have believed the conduct at issue was lawful under clearly established law. *Newell v. Sauser,* 79 F.3d 115, 117 (9th Cir.1996). Long-established and clear rules of criminal procedure allow officers to seize evidence only pursuant to a lawful warrant or one of the valid warrant exceptions, including the exception for incriminating items within plain view. *See Horton v. California,* 496 U.S. 128, 133 & n. 6, 135, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) (quoting *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)). Whether the officers reasonably could have believed that it was lawful to seize the remaining items, largely photographs, requires greater information about the content of those items. Thus, a genuine issue of material fact exists regarding the officers' entitlement to qualified immunity. Summary judgment on qualified immunity grounds will be denied.

## II. Discovery Deadline

At a status hearing on June 22, 1999, the court ordered the parties to file by July 9, 1999 a stipulated proposed order regarding a discovery deadline. On August 16, 1999, Defendants filed a "Notice of Inability to File Discovery Stipulation." The Notice informed the Court that the parties had agreed to depose several people, including Plaintiff, on July 7 and 8, 1999.

**5.** Some item numbers appear more than once because the numbered description references

more than one item.

However, the parties were unable to reach any further agreements regarding discovery.

In response to the "Notice of Inability to File Discovery Stipulation," the Court set a second status hearing for October 18, 1999 and instructed the parties to file by October 14, 1999 a joint brief of their positions regarding completion of discovery. On October 14, Plaintiff filed a Motion to Amend the Complaint to Name an Additional Party. This motion is currently pending before the Magistrate Judge. The parties' joint status report filed October 15, 1999 indicates that the potential new defendant already has been deposed and plaintiff anticipates that only requests for admission will be served upon him.

The report adds that Plaintiff will be serving requests for admissions upon all defendants and anticipates needing an additional two months to complete discovery. The report further states that Defendants "object to any additional discovery at this point because [the] discovery deadline previously agreed to by the parties has passed." At the second status hearing on October 18, the Court indicated that it would set relevant deadlines.

A review of the record indicates that both parties continued to engage in discovery after expiration of the latest discovery deadline. In the Orders docketed on the dates shown in the table below, the discovery deadline and other deadlines were established and then extended:

### Deadlines

| Matter to Which Deadline Applies | Date of order in which deadline was set | | | |
| --- | --- | --- | --- | --- |
| | 2/3/97 | 5/22/97 | 9/22/97 | 3/25/98 |
| Discovery | 5/26/97 | 8/22/97 | 9/26/97 | none |
| Dispositive Motions | 5/12/97 | 9/19/97 | 10/10/97 | 5/29/98 |
| Pretrial Order | 9/1/97 | 1/23/98 | 1/23/98 | 6/30/98 or 60 days after ruling on dispositive motions. |

The extension granted on March 25, 1998 was in response to Defendants' Motion to extend time for filing both dispositive motions and the joint pretrial statement. As the table indicates, Magistrate Judge Silver, to whom the case was assigned for resolution of nondispositive motions, did not extend the discovery deadline at that time. Thereafter, however, Plaintiff filed a Motion for Issuance of a Discovery Scheduling Order. By Order docketed June 23, Judge Silver granted the Motion and allowed Plaintiff to serve 10 interrogatories on each Defendant by June 26, 1998. Plaintiff filed a Notice of Service of Discovery of Interrogatories on each of the five Defendants on July 1, 1998. The record indicates that, with the exception of these interrogatories, the discovery deadline expired on September 26, 1997.

Thereafter, the parties continued to engage in discovery despite the passage of the discovery deadline and their failure to request additional extensions. Defendants were the first and most frequent offenders. On October 19, 1998, Defendants filed a notice of serving Plaintiff with their first set of non-uniform interrogatories. On May 13, 1999, Defendants filed a notice of serving Plaintiff with their first request for production of documents. Thereafter, the depositions referenced in the joint status report, conducted by both parties, occurred in July, 1999. Finally, Defendants filed a notice of serving Plaintiff with another request for production of documents on July 19, 1999.

Given Defendants' repeated discovery requests after the expiration of the deadline, the Court concludes that neither of

the parties will be prejudiced by extension of the discovery deadline for approximately six weeks to Monday, February 28, 2000. The parties are instructed to limit their discovery requests, seeking only information that could lead to relevant evidence regarding the remaining claims, a portion of the original Fourth Amendment claim plus the supplemental state claims of negligence and conversion. Following the Magistrate Judge's ruling on the Motion to Amend, and his determination of whether additional deadlines are necessary for discovery and dispositive motions, the Court will set deadlines for submission of the proposed final pretrial order and for the final pretrial conference.

Accordingly,

**IT IS ORDERED** vacating the portion of the prior Order dated March 31, 1999 that denied Defendants' Motion for Summary Judgment on the Fourth Amendment claim.

**IT IS FURTHER ORDERED** granting Defendants' Motion for Summary Judgment on the Fourth Amendment claim in part and denying it in part. Summary judgment is denied with respect to the issue of whether the Defendants violated the Fourth Amendment by seizing from the property located on Indian School Road the item described in the inventory as: "stack of photos of women" and by seizing from the storage locker those items described in the inventory merely as photographs, usually of women, or albums containing such photographs, numbered in the inventory as follows: 2, 20, 38, 39, 47, 66, and 69, as well as the items described as "three posters". Summary judgment is granted to Defendants with respect to the issue of whether Defendants violated the Fourth Amendment by seizing all of the other items.

**IT IS FURTHER ORDERED** extending the discovery deadline to Monday, February 28, 2000.

**IT IS FURTHER ORDERED** that the parties are to inform the court whether or not they request this Court to appoint a judge to conduct a settlement conference.

The parties shall inform the Court by filing notice no later than Friday, March 10, 2000.