**Ali SHAMAEIZADEH, Plaintiff–Appellant,**

v.

**Joel CUNIGAN; Mark Wiles; Assistant Chief Wayne Grant; Sam Manley; John Telek; Richmond Police Department; The City of Richmond, Kentucky, Defendants–Appellees.**

No. 98–5451.

United States Court of Appeals, Sixth Circuit.

Argued: March 17, 1999

Decided and Filed: July 1, 1999

David R. Marshall (argued and briefed), Lexington, Kentucky, for Plaintiff–Appellant.

Douglas L. McSwain (argued and briefed), David B. Pearce (briefed), Sturgill, Turner, Barker & Moloney, Lexington, Kentucky, for Defendants–Appellees.

Before: JONES, CONTIE, and MOORE, Circuit Judges.

## OPINION

MOORE, Circuit Judge.

Ali Shamaeizadeh brought this 42 U.S.C. § 1983 action for damages related to an allegedly illegal search of his house by state officials and subsequent criminal proceeding by federal prosecutors. The criminal charges brought against Shamaeizadeh were eventually dismissed. The district court found that Shamaeizadeh's claim was barred by the applicable statute of limitations. We **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

### I

Shamaeizadeh claims that his constitutional rights under the Fourth and Fourteenth Amendments were violated when police officers employed by the City of Richmond, Kentucky, searched his residence at 121 Millstone Road (hereinafter "Millstone") in Richmond on March 14, 1994. As a result of this allegedly unconstitutional search and the subsequent seizure of property from the residence, claims Shamaeizadeh, he was arrested and prosecuted in federal court, incurring large expenses and a myriad of other tangible and intangible damages.

The facts leading up to this case have been set out previously by this court in a published opinion, *see United States v. Shamaeizadeh,* 80 F.3d 1131 (6th Cir. 1996), and will thus be appropriately limited here. On the date of the search, Shamaeizadeh was living with his fiancée,

Theresa Schmitt, in the upper level of a two-level house that Shamaeizadeh owned. Brian Reed and Joe Ford lived in the lower level of the house.

On the evening of March 14, 1994, Schmitt called the police alleging that a burglary had taken place on the premises. Officer Mark Wiles of the Richmond Police Department responded to the call. Schmitt asked Wiles to search the house. He first searched the upper level. During the search, Wiles noticed a broken door that led to the lower-level apartment. Schmitt claimed she had broken the door in order to use the telephone of the lower-level apartment. Wiles also detected the smell of marijuana. Wiles then went onto a deck overlooking the back yard. Schmitt remained inside, entered the lower-level apartment, and exited from it into the back yard. She then asked Wiles to search the lower-level apartment. She explained that the two occupants were away. Wiles searched the lower level.

Wiles did not find anything of import in the lower-level apartment. Many of the doors were locked. He did, however, further detect the smell of marijuana. He thus called the Assistant Police Chief, Wayne Grant, for assistance. Grant arrived, and without requesting permission Wiles and Grant proceeded to search both levels of the house. They discovered marijuana cigarette butts in an ashtray in the lower level. They then found a box of fluorescent light bulbs and noticed that fluorescent lighting turned on and off intermittently in one of the locked rooms. They suspected that the lights were being used to grow marijuana. They called in Officer Joel Cunigan, a trained and experienced detector of marijuana, and Sergeant Sam Manley.

Grant, Manley, and Cunigan searched Millstone for a third time. Cunigan thought that there was a strong smell of marijuana in the lower-level apartment, and he discovered a hemostat, rolling papers, and a bag of catnip that he thought was marijuana. Schmitt, after being advised of her rights, told the officers she thought Reed and Ford were growing marijuana in the lower-level apartment.

Cunigan secured a search warrant from a county district-court judge. The officers executed the search warrant, forcibly entering the locked rooms of the lower level, and seized 393 marijuana plants and various marijuana-growing equipment. The officers arrested Shamaeizadeh, Reed, and Ford, who were later indicted under federal drug laws 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. §§ 2 and 924(c)(1). Shamaeizadeh was further charged with using Millstone to commit or facilitate the drug violations under 21 U.S.C. § 853, for which the property would be subject to forfeiture.

Upon a motion to suppress the seized evidence,[1] the district court judge, adopting a magistrate judge's report, found the first warrantless search constitutional due to "exigent circumstances." The judge concluded that the second and third warrantless searches violated the Fourth Amendment, however, and redacted the portions of Cunigan's affidavit used to secure the search warrant that referred to evidence obtained during the second and third warrantless searches. The district judge concluded that the redacted affidavit did not provide probable cause to support a search warrant for the lower level of the apartment.

The government appealed to this court, arguing that even the redacted affidavit supported the issuance of a search warrant for both levels of the house. In a published opinion, this court disagreed. *See Sha-*

---

1. It is interesting to note that "[t]he district court denied Shamaeizadeh standing to participate in [this] motion to suppress because he had no reasonable expectation of privacy with regard to the basement floor of Millstone, where the inculpatory contraband was found." *Shamaeizadeh,* 80 F.3d at 1135 n. 1. This court dismissed for lack of appellate jurisdiction an attempted appeal by Shamaeizadeh from the decision of the district court. *See United States v. Shameizadeh* [sic], 41 F.3d 266, 267 (6th Cir.1994).

*maeizadeh,* 80 F.3d at 1138–39. The Sixth Circuit opinion was filed on April 9, 1996, and the government dismissed the charges against Shamaeizadeh on that day. Shamaeizadeh filed this 42 U.S.C. § 1983 action on April 8, 1997. The district court, applying Kentucky's one-year statute of limitations for personal-injury actions, found that the limitations period began to run on the date of the search, not the date the criminal charges against Shamaeizadeh were dismissed. The district court then dismissed Shamaeizadeh's § 1983 claim as untimely.

Shamaeizadeh appealed. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291. The district court had jurisdiction under 28 U.S.C. § 1343(3) & (4).

## II

■ The issue before the court is the date on which the statute of limitations begins to run for 42 U.S.C. § 1983 actions claiming an alleged unconstitutional search and seizure. Although this issue is a matter of federal law, we apply the relevant state statute of limitations for personal injury actions absent special circumstances. *See Kuhnle Brothers, Inc. v. County of Geauga,* 103 F.3d 516, 519 (6th Cir.1997). We agree that Kentucky's one-year statute-of-limitations period for personal injury actions applies to § 1983 claims of this type. *See Collard v. Kentucky Bd. of Nursing,* 896 F.2d 179, 182 (6th Cir.1990). Typically the statute of limitations for filing an action alleging an unconstitutional search and seizure begins to run at the time of the injury—when the plaintiff knows or has reason to know about the occurrence of the unconstitutional search. *See Kuhnle Brothers, Inc.,* 103 F.3d at 520 (stating that "[o]rdinarily, the limitations period starts to run 'when the plaintiff knows or has reason to know of the injury which is the basis of his action' " (quoting *Sevier v. Turner,* 742 F.2d 262, 272 (6th Cir.1984))). In light of the Supreme Court's opinion in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), however, the resolution of this issue is more complicated.

In *Heck,* an inmate in a state prison brought a § 1983 action against two state prosecutors and a state police investigator, claiming that the defendants knowingly destroyed exculpatory evidence and caused the use of an illegal voice-identification procedure at trial. Heck sought compensatory and punitive damages but did not ask for injunctive relief. The Supreme Court held that Heck could not recover damages under § 1983 because his conviction had not "been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 487, 114 S.Ct. 2364. The holding was premised, in part, on the Court's attempt to square "the two most fertile sources of federal-court prisoner litigation—the Civil Rights Act of 1871, Rev.Stat. § 1979, as amended, 42 U.S.C. § 1983, and the federal habeas corpus statute, 28 U.S.C. § 2254." *Id.* at 480, 114 S.Ct. 2364.

The Supreme Court had previously held in *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), "that habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." *Heck,* 512 U.S. at 481, 114 S.Ct. 2364 (citing *Preiser,* 411 U.S. at 488–90, 93 S.Ct. 1827). Despite the fact that damages are not allowable in a habeas corpus proceeding, the Court in *Heck* nevertheless held that awarding damages in a § 1983 action would, in certain cases, "necessarily demonstrate[ ] the invalidity of the conviction." *Id.* at 481–82, 114 S.Ct. 2364. The Court, noting that § 1983 is a species of tort liability, and that the federal courts have often looked to common law to frame the boundaries of a § 1983 suit, analogized § 1983 actions to the common law cause of action for malicious prosecution. Adopting

an element of a prima-facie claim for malicious prosecution—"termination of the prior criminal proceeding in favor of the accused," *id.* at 484, 114 S.Ct. 2364—the Court held that Heck's § 1983 claim against the state officials was not cognizable in the face of his still-outstanding conviction.

The Supreme Court's opinion in *Heck* included a caveat. The Court wrote: "[I]f the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* at 487, 114 S.Ct. 2364 (footnotes omitted). The Supreme Court gave an example in a footnote, stating:

> [A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful. In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury which, we hold today, does not encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned).

*Id.* at 487 n. 7, 114 S.Ct. 2364 (citations omitted).

Federal courts have interpreted this footnote in two different ways. Certain courts read this language to create a general exception to the doctrine of *Heck* for Fourth Amendment unreasonable-search claims brought against state officials under § 1983. *See, e.g., Copus v. City of Edgerton,* 151 F.3d 646, 648 (7th Cir.1998) (interpreting footnote 7 of *Heck* to mean "that

Fourth Amendment claims for unlawful searches or arrests do not necessarily imply a conviction is invalid, so in all cases these claims can go forward"); *Simmons v. O'Brien,* 77 F.3d 1093 (8th Cir.1996) (holding that harmless error analysis applies to confessions obtained in violation of the Fifth Amendment, as with Fourth Amendment claims, and therefore a coerced-confession claim in a § 1983 action has accrued even in the face of an outstanding conviction because the validity of the conviction will not necessarily be challenged by a successful § 1983 suit); *Datz v. Kilgore,* 51 F.3d 252, 253 n. 1 (11th Cir.1995) (holding that *Heck* "is no bar to Datz' civil action because, even if the pertinent search did violate the Federal Constitution, Datz' conviction might still be valid considering such doctrines as inevitable discovery, independent source, and harmless error").

Other courts have held that Fourth Amendment claims could be brought under § 1983 notwithstanding a valid conviction, but only once the district court has made an independent determination that success on the § 1983 claim would not demonstrate the invalidity of the conviction. *See, e.g., Mackey v. Dickson,* 47 F.3d 744, 746 (5th Cir.1995) (holding that a § 1983 claim for an unlawful arrest would not necessarily demonstrate the invalidity of a conviction, but the district court would have to evaluate the evidence presented at the criminal trial, and § 1983 proceedings were therefore ordered stayed "until the pending criminal case has run its course").

We dealt with *Heck's* applicability to Fourth Amendment claims in *Schilling v. White,* 58 F.3d 1081 (6th Cir.1995). In *Schilling,* a state prisoner filed a § 1983 claim for damages against two Ohio police officers, alleging that the officers illegally searched him and his car in violation of his constitutional rights under the Fourth Amendment. *Id.* at 1082–83. Schilling admitted upon inquiry by the court that he had pleaded guilty to driving under the influence of drugs. The conviction had not

been overturned or expunged. *Id.* at 1083. This court read the footnote in *Heck* as clearly rejecting the conclusion that a general exception to the requirement that a conviction be set aside exists for Fourth Amendment claims under § 1983. *Id.* at 1086.

*Schilling* did not reject the second reading of *Heck* above—that if a district court, after an independent review, determined that a § 1983 cause of action would not imply the invalidity of an outstanding conviction, the § 1983 action could proceed. The *Heck* footnote, on which the *Schilling* court relied, explicitly states that if evidence obtained at the allegedly unconstitutional search resulted in the § 1983 plaintiff's conviction, after being admitted under an exception to the exclusionary rule, a § 1983 action may lie, but the § 1983 plaintiff may not seek damages for the injury of being convicted and imprisoned until the conviction is overturned. *Cf. Braxton v. Scott,* 905 F.Supp. 455, 458 (N.D.Ohio 1995) (reasoning that the more plausible reading of *Schilling* is that "fourth amendment claims under § 1983 may be brought without setting aside the conviction only if success would not undermine the conviction and if the plaintiff alleges a compensable injury other than the conviction").

The *Schilling* court appears to have based its holding on the fact that Schilling sought damages relating to his conviction. Thus, success on Schilling's § 1983 claim would necessarily have challenged the validity of his conviction, and Schilling could not bring his claim.[2]

█ Turning to the focus of this case—the commencement date for the running of the statute of limitations—neither *Heck* nor *Schilling* definitively resolves the issue before us. The Supreme Court in *Heck* specifically noted that the statute of limitations posed no difficulty in that case. A cause of action under § 1983 that would imply the invalidity of a conviction does not accrue until the conviction is reversed or expunged, and therefore the statute of limitations does not begin to run until such an event occurs, if ever. *See Heck,* 512 U.S. at 489–90, 114 S.Ct. 2364. *See also Schilling,* 58 F.3d at 1087 n. 5.[3] The underlying theory of *Heck,* however, provides the foundation for the proper resolution of the issue in this case.

█ Shamaeizadeh's § 1983 claim is based on an alleged violation of his rights under the Fourth and Fourteenth Amendments due to the state police officers' follow-up warrantless searches at Millstone

**2.** The *Schilling* court points out that in *Heck* Justice Scalia "examined the common law of tort liability and concluded that proof of the illegality of a conviction is a necessary element of the § 1983 cause of action. Unless that conviction has been reversed, there has been no injury of constitutional proportions, and thus no § 1983 suit may exist." *See Schilling,* 58 F.3d at 1086. Proof of illegality of the conviction is a necessary element of a § 1983 cause of action, of course, only when, as the *Schilling* court also quoted from *Heck,* the § 1983 plaintiff seeks damages for an allegedly unconstitutional conviction or imprisonment.

**3.** In a recent Supreme Court case, *Spencer v. Kemna,* 523 U.S. 1, ——, 118 S.Ct. 978, 989, 140 L.Ed.2d 43 (1998), Justice Souter, concurring and joined by Justices O'Connor, Ginsburg, and Breyer, indicated that *Heck's* favorable termination requirement should no longer apply after a plaintiff had served the

term of imprisonment. Apparently, in such a situation, the statute of limitations would begin to run when the plaintiff has satisfied his term of imprisonment. Justice Stevens, who dissented from the majority opinion, nevertheless agreed with Justice Souter on this issue, thereby providing a majority of the Court. *See id.* at 992 n. 8 (Stevens, J., dissenting). The clarification by the Supreme Court of this issue calls one aspect of the *Schilling* case into doubt. This court held in *Schilling* that "*Heck* applies as much to prisoners in custody (a habeas prerequisite) as to persons no longer incarcerated." *Schilling,* 58 F.3d at 1086. It is not clear from the opinion whether Schilling served any time in prison after pleading guilty to the charges against him or whether he was ever in custody. The majority of the Court in *Spencer,* however, now clearly excludes from *Heck's* favorable termination requirement former prisoners no longer in custody.

of the lower-level apartment and their seizure of various marijuana and marijuana-producing items. Shamaeizadeh seeks compensatory and punitive damages based on the alleged illegal seizure of property and the fact that he was "forced to expend great sums to defend himself and his name, including posting bond, paying attorneys, and incurring other litigation expenses, lost wages, suffered impairment to his power to earn money, suffered medical expenses, and suffered pain, embarrassment, and humiliation and will continue to so suffer." *See* J.A. at 69 (Second Am. Compl.).

Unlike the plaintiff in *Heck,* Shamaeizadeh is not a prisoner. Shamaeizadeh was neither tried nor convicted. He never had a claim for relief under the writ of habeas corpus.[4] Therefore Shamaeizadeh's § 1983 claim would not be an attempt to sidestep the exclusive remedy of habeas corpus for challenging a conviction, as was at issue in *Heck.* As indicated above, the charges against him were dismissed after this court affirmed the district court's finding that the second and third warrantless searches of the downstairs apartment of Millstone were invalid. Shamaeizadeh argues, however, that the underlying logic of *Heck* and *Schilling* nonetheless controls the outcome of this case, and that his cause of action under § 1983 did not accrue until the charges against him were dismissed. We agree.

Other courts have extended the reasoning of *Heck* to certain pre-conviction situations where habeas is not available. In *Smith v. Holtz,* 87 F.3d 108 (3d Cir.1996), the § 1983 plaintiff, Smith, sought compensation for an allegedly unconstitutional conviction and imprisonment. Smith was convicted of murder in a Pennsylvania state court, but the conviction was reversed on direct appeal. Although the

case was remanded for a new trial, the appellate court ordered all charges dismissed before commencement of the new trial. After the charges were dismissed, Smith filed his § 1983 claim alleging that the conviction had been unlawful. The defendants argued that Smith's claims were barred by the applicable statute of limitations, because in their view the statute of limitations began to run when his conviction was reversed.

The Third Circuit, framing the issue as "whether ... a claim is cognizable under § 1983 where its success would necessarily imply the invalidity of a future conviction that might be entered on a pending criminal charge," *id.* at 109, held that the statute of limitations did not begin to run until the charges against Smith were dismissed. *See also Covington v. City of New York,* 171 F.3d 117, 124 (2d Cir.1999) (holding that "[i]t is true that *Heck* did not directly address the issue of the accrual of claims that, if successful, would necessarily imply the invalidity of a potential conviction on a pending criminal proceeding. However, we agree with the Third Circuit that the reasoning in *Heck* is applicable to such a case"). After discussing the rationale behind the decision in *Heck,* the *Smith* court wrote:

> We find that these concerns apply equally to claims that, if successful, would necessarily imply the invalidity of a future conviction on a pending criminal charge. A claim by a defendant in an ongoing criminal prosecution which necessarily challenges the legality of a future conviction on a pending criminal charge lies at the intersection of the federal habeas corpus statute and the Civil Rights Act of 1871. If such a claim could proceed while criminal proceedings are ongoing, there would be a po-

---

4. Although *Heck* dealt with a § 1983 action filed in federal court by a state prisoner, this court has held that the logic of *Heck* applies with equal force to federal prisoners. *See Robinson v. Jones,* 142 F.3d 905, 907 (6th Cir.1998) (*"Heck* holding applies equally to an action brought under *Bivens* "). In this case, Shamaeizadeh is suing state officials for actions that led to the initiation of a federal prosecution. We think it clear that the logic of *Heck* is relevant here as well.

tential for inconsistent determinations in the civil and criminal cases and the criminal defendant would be able to collaterally attack the prosecution in a civil suit. In terms of the conflicts which *Heck* sought to avoid, there is no difference between a conviction which is outstanding at the time the civil rights action is instituted and a potential conviction on a pending charge that may be entered at some point thereafter.

*Smith*, 87 F.3d at 113.[5]

We agree with the reasoning of the Third Circuit in *Smith* that the concerns of *Heck* apply pre-conviction as well as post-conviction.[6] Unlike the § 1983 plaintiffs in *Smith* and *Covington*, however, Shamaeizadeh's alleged injury is not unlawful conviction and subsequent imprisonment, but rather injury caused by an unlawful search resulting in the initiation of criminal proceedings against him. In light of this court's analysis of Fourth Amendment claims in *Schilling*, however, this distinction does not alter our result.

■■■■ Under *Schilling*, a prisoner seeking to challenge an allegedly unconstitutional search and seizure in a § 1983 claim must show that a decision in his favor would not imply the invalidity of his outstanding conviction. Therefore, because we hold that the reasoning of *Heck* applies pre-conviction, *Schilling* also requires that a § 1983 plaintiff show that a decision in his favor would not imply the invalidity of a future conviction.

Since it appears that the only evidence that was to be introduced against Shamaeizadeh was evidence discovered in Shamaeizadeh's house during the allegedly illegal search, it would not have been possible, while the criminal proceedings against Shamaeizadeh were pending, to determine whether a decision on Shamaeizadeh's claim would imply the invalidity of his potential conviction without deciding issues common to the criminal action—i.e., whether the search was lawful. If the criminal court eventually deemed the search lawful, and Shamaeizadeh had been convicted based on evidence obtained during the search, under *Heck* no § 1983 cause of action would be available. Pursuant to footnote 7 of *Heck*, if the search had been deemed unlawful, but the government had proceeded with the case against Shamaeizadeh and succeeded in admitting the evidence discovered during the search under an exception to the exclusionary rule, Shamaeizadeh, if convicted, could not bring a § 1983 claim for damages related to his conviction or confinement. As a result, Shamaeizadeh could not bring an action seeking damages related to the criminal proceeding brought against him until a disposition in that proceeding had

---

**5.** Pursuant to Preiser, if the criminal defendant is in custody during the criminal proceedings, any § 1983 cause of action that would seek to end or shorten custody would be deemed a habeas corpus action, and could not be brought under § 1983. *See, e.g., Antonelli v. Foster*, 104 F.3d 899, 900 (7th Cir. 1997) (holding that *Heck* applies to a § 1983 plaintiff who is confined pursuant to legal process but preconviction). Under *Heck*, the rule would apparently be the same for a criminal defendant in custody seeking damages under § 1983 if an award of damages would imply the invalidity of any subsequent conviction.

**6.** Indeed, this court recently adopted this conclusion. In *Callihan v. Schneider*, 178 F.3d 800 (6th Cir.1999), a pro se § 1983 plaintiff appealed a district court order denying his motion to appeal in forma pauperis. The

district court dismissed the case as premature pursuant to *Heck* because the § 1983 plaintiff was facing state criminal charges. After holding that a party could proceed on appeal in forma pauperis under Fed.R.App.P. 24, this court wrote:

> Callihan's appeal is nevertheless frivolous and the district court did not err in denying Callihan leave to proceed in forma pauperis. As Callihan is apparently facing state criminal charges, under *Heck*, Callihan's civil rights action must be dismissed without prejudice until the state proceedings have resulted in a not guilty verdict, or any conviction has been overturned on appeal or questioned in a federal habeas corpus petition.

*Id.* at 804 (citing *Heck*, 512 U.S. at 486–87, 114 S.Ct. 2364).

been reached.[7] We hold, therefore, that the proper starting point for the running of the statute of limitations is the date of the dismissal of the criminal charges.[8]

We further conclude that holding that the statute of limitations begins to run at the time of the search, and requiring that a federal court stay any § 1983 action brought during, and related to, criminal proceedings would not adequately deal with this issue.[9] To require a defendant in a criminal proceeding to file a civil action raising any potential § 1983 claims within one year of any alleged illegal searches or other alleged violations of constitutional rights, claims which the federal court must then abstain from resolving until the disposition of the criminal proceedings, would misdirect the criminal defendant. Surely, just as a convicted prisoner must first seek relief through habeas corpus before his § 1983 action can accrue, so too should the defendant in a criminal proceeding focus on his primary mode of relief—mounting a viable defense to the charges against him—before turning to a civil claim under § 1983. Moreover, if the criminal defendant is eventually convicted, *Heck* would often require that a federal court then dismiss without prejudice any § 1983 claims that are filed because they have not yet accrued. We conclude that it is only appropriate that the statute of limitations not begin to run for criminal defendants seeking to file the same § 1983 claims until the disposition of any pending criminal proceedings.[10]

The criminal charges against Shamaeizadeh were dismissed on April 9, 1996, and Shamaeizadeh filed his § 1983 action on April 8, 1997. Shamaeizadeh thus appears to have filed his § 1983 action within Kentucky's one-year statute of limitations for personal injury actions.

### III

For the reasons stated above, we **REVERSE** the judgment of the district court, and **REMAND** for further proceedings consistent with this opinion.

---

7. The District Court relied on *Chatman v. Slagle*, 107 F.3d 380 (6th Cir.1997), in holding that the statute of limitations in this case began to run at the time of the search. *Chatman* concluded that in a case in which a criminal prosecution has been dismissed, questions regarding the potential admissibility of evidence at a hypothetical trial have no bearing on a subsequent § 1983 action challenging the search. The *Chatman* court had no occasion to discuss the accrual of the § 1983 cause of action in such situations.

8. Because the government may appeal a suppression order, as it did here, we do not hold that the statute of limitations begins to run on the date the suppression order was issued.

9. In *Heck*, the Supreme Court, citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), wrote, "if a state criminal defendant brings a federal civil-rights lawsuit during the pendency of his criminal trial, appeal, or state habeas action, abstention may be an appropriate response to the parallel state-court proceedings." *See Heck*, 512 U.S. at 487 n. 8, 114 S.Ct. 2364. This footnote, however, is questioning whether abstention may be appropriate even when a successful § 1983 claim would not imply the invalidity of a conviction.

10. After the disposition of the criminal proceedings, if the § 1983 claim may go forward under *Heck*, the plaintiff may seek all damages related to the allegedly illegal search. Therefore, Shamaeizadeh may seek damages that arose at the time of the search as well as damages resulting from the criminal proceedings brought against him.