# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 04-3949

ANDRE WALLACE,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO, KRISTEN KATO
and EUGENE ROY,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 CV 2296—**Samuel Der-Yeghiayan,** *Judge.*

ARGUED MAY 31, 2005—DECIDED MARCH 8, 2006

Before EASTERBROOK, ROVNER, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* From the age of fifteen until twenty-three, Andre Wallace was serving time in prison for his alleged participation in a murder. After several appeals, the Illinois Appellate Court found that the police had arrested him without probable cause and that his confession was not sufficiently attenuated from his unlawful arrest. At that point, the prosecution decided to leave well enough alone, and Wallace was released. Only then did Wallace commence the present action: he filed a suit under 42 U.S.C. § 1983 in federal court asserting that Detectives Kato and Roy and the City of Chicago had violated his Fourth Amendment rights and that they had

also committed the state torts of malicious prosecution and false imprisonment. The district court granted summary judgment in favor of all three defendants. We affirm. In doing so, we have found it necessary to clarify the law of our circuit concerning when a false arrest claim accrues. We reaffirm the holding of *Booker v. Ward*, 94 F.3d 1052, 1056-57 (7th Cir. 1996), that false arrest claims accrue at the time of arrest; to the extent that it is inconsistent with *Booker v. Ward* and the present opinion, we overrule *Gauger v. Hendle*, 349 F.3d 354 (7th Cir. 2003).[Œ]

## I

On January 17, 1994, John Handy was shot and killed at 825 N. Lawndale Avenue near the intersection of Chicago Avenue and Lawndale. Handy had been working as a house sitter for a construction company and had apparently had a previous confrontation with drug dealers in the area. Detectives Kristen Kato and Eugene Roy were assigned to investigate Handy's murder. After discussing the murder with witnesses and informants in the neighborhood, the police brought Wallace and Laron Jackson in for questioning on the night of January 19, 1994. At the time, the police were not aware that Wallace was only 15 years old because Wallace had told them he was 17 years old.

During the course of the night, Detectives Kato and Roy took turns interrogating Wallace. Wallace, they claim, was free to leave the station house at any time. Wallace's account is somewhat different: he reported that Kato

---

[Œ] Because this opinion would overrule an earlier decision of this court, in the manner described in Part II.A. below, it has been circulated among all judges of this court in regular active service. A majority did not wish to hear the case en banc. Circuit Judge Posner voted to hear the case en banc for the reasons stated in his dissent.

and Roy played "good cop/bad cop" with him to induce him to confess falsely. Kato was the bad guy; whenever Kato took a break, Roy spoke with Wallace and told him that if he confessed, Roy could get Kato to stop hurting him. This continued through the night. At about 4:15 a.m., the detectives confronted Wallace with Jackson's and another witness's statements that they saw Wallace running down the gangway from 825 N. Lawndale after hearing shots. Wallace then admitted that he was only 15. Around 6:00 a.m., Wallace agreed to confess. A youth officer and an assistant state's attorney met with Wallace and read him his *Miranda* rights and took his written statement. In his complaint, Wallace claims that Kato told him not to tell the state's attorney that Kato had promised Wallace that he could go home after he gave his statement.

Before his trial, Wallace filed several motions to suppress his statements on the grounds that his arrest had been made without probable cause and that the statements were coerced and violated his *Miranda* rights. His motions were all denied. On April 19, 1996, after a bench trial, Wallace was found guilty of first degree murder.

Wallace appealed. In an opinion issued on September 21, 1998, the Illinois Appellate Court found that the police arrested him without probable cause and remanded for a hearing to determine whether his statements were sufficiently attenuated from his unlawful arrest to permit their use. On remand, the circuit court found that Wallace's confession was sufficiently attenuated from his arrest and affirmed his conviction. Wallace appealed again, and the Illinois Appellate Court reversed the circuit court's decision and remanded for a new trial. On April 10, 2002, the prosecution filed a *nolle prosequi* motion and dropped the case.

On April 2, 2003, Wallace filed the present suit, asserting that his Fourth Amendment rights had been violated and

raising state law claims for false imprisonment and malicious prosecution. Kato and Roy filed an answer and a motion for summary judgment, and the City filed a motion to dismiss. On October 21, 2003, Wallace filed his response, just a week before we decided *Gauger v. Hendle*, which held that under the circumstances presented there the statute of limitations did not begin to run until the defendant's conviction was invalidated. 349 F.3d at 361-62.

On March 30, 2004, the district court granted summary judgment for Roy and Kato on all claims except Wallace's federal fair trial claim, which it denied without prejudice. The court also denied without prejudice the City's motion to dismiss under Fed. R. Civ. P. 12(b)(6). Wallace filed an amended complaint on April 28, 2004, reasserting his Fourth Amendment claims. The defendants answered and filed a second motion for summary judgment, which included an affirmative defense of collateral estoppel. Wallace's response asserted that the defendants had waived their collateral estoppel defense by failing to raise it in their answer to his amended complaint. The defendants moved to amend their answer.

On October 29, 2004, the court granted the defendants' motion to amend their answer to assert their collateral estoppel defense and in the same order granted the defendants' motion for summary judgment. It concluded that Wallace had conceded that his false arrest claim was time-barred. Alternatively, the court held that even if Wallace was allowed to replead his claim under the more recent decision in *Gauger*, he would still be time-barred because Wallace could have brought the claim after the Illinois Appellate Court found on September 21, 1998, that Wallace was arrested without probable cause. This was so even though the appellate court remanded the case to the trial court to determine whether Wallace's confession was sufficiently attenuated from his illegal arrest. The district court concluded that at this point it was possible that even

if Wallace was illegally arrested his conviction could still stand, and thus he could not take advantage of the *Gauger* rule.

## II

A.  False Arrest Claim

Wallace brought his false arrest claim for violation of his Fourth Amendment rights under 42 U.S.C. § 1983. Before turning to the merits of the claim, we address briefly the government's argument that it is waived (or more properly, forfeited) because Wallace failed to raise it in a timely manner in the district court. Our review of the record shows that Wallace initially conceded that his false arrest claim was time-barred in the responsive papers he filed on October 21, 2003, under pre-*Gauger* law. After *Gauger* appeared a week later and before the district court ruled on the defendants' second motion for summary judgment, Wallace changed his position and asserted the merits of the false arrest claim. We therefore conclude that he neither waived nor forfeited this argument below.

Although federal law governs the question of the accrual of constitutional torts, state statutes of limitations and tolling doctrines apply once accrual has been determined. See *Hardin v. Straub*, 490 U.S. 536, 538-39 (1989); see also *Gonzalez v. Entress*, 133 F.3d 551, 554 (7th Cir. 1998). Wallace's false arrest claim is subject to the two-year statute of limitations supplied by Illinois law under 735 ILCS § 5/13-202. In his case, that period was tolled until November 7, 1999, two years after Wallace turned eighteen years old, by virtue of 735 ILCS § 5/13-211. If Wallace's claim accrued as of April 10, 2002, when his conviction was finally nullified and the state dropped his case, then the suit filed on April 2, 2003, easily met the two-year deadline. If, on the other hand, his claim accrued at the time of his

arrest on January 20, 1994, his claim is time-barred, even taking into account the tolling that occurred during the period of his minority. Everything depends, therefore, on the accrual rule we must use.

In principle, there are at least three approaches we could take to the accrual of Fourth Amendment claims: (1) the Fourth Amendment claim arises at the time of the wrong (*i.e.*, the false arrest, the unlawful search); (2) the Fourth Amendment claim accrues only after the underlying conviction definitively has been set aside; or (3) as *Gauger* suggested, accrual depends on how central the evidence was to the conviction: if it was non-essential, use rule 1; if it was critical, use rule 2. Before settling on our preferred option, it is useful to review the underlying law in this area.

When a person's Fourth Amendment rights have been violated by a false arrest, the injury occurs at the time of the arrest. Thus, an individual is entitled to recover only for injuries suffered from the time of arrest until his arraignment. *Wiley v. City of Chicago*, 361 F.3d 994, 998 (7th Cir. 2004) ("[W]e have held that the scope of a Fourth Amendment claim is limited up until the point of arraignment."); see also *Gauger*, 349 F.3d at 363 ("[T]he interest in not being prosecuted groundlessly is not an interest that the Fourth Amendment protects."). On the other hand, as Wallace's own case illustrates, it is often the case that the prosecution cannot proceed without the fruits of an unlawful arrest (as Wallace's confession was) or an unlawful search. In those cases, the idea that the claim accrues at the time of the injury runs into some tension with the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994).

In *Heck*, the Court held that a constitutional claim that would undermine a criminal conviction if vindicated cannot be brought until the defendant's conviction is nullified. *Id.* at 486-87. This general rule, which works perfectly well for complaints like the ones about the knowing destruction of

evidence and illegal identification procedure raised in *Heck*, has caused some courts—including this one in *Gauger*—to conclude that certain Fourth Amendment claims also do not accrue until after the defendant's conviction has been invalidated. See, *e.g.*, *Gauger*, 349 F.3d at 362; *Harvey v. Waldron*, 210 F.3d 1008, 1015 (9th Cir. 2000) (holding that Fourth Amendment claims based on illegal search and seizure of evidence are not cognizable until the conviction is overturned or charges dismissed); *Covington v. City of New York*, 171 F.3d 117, 124 (2d Cir. 1999) (finding that generally false arrest claims accrue at the time of arrest, but that if success in the § 1983 case would "imply the invalidity of a conviction in a pending criminal prosecution," it does not accrue "so long as the potential for a judgment in the pending criminal prosecution continues to exist").

*Heck* itself instructs that a district court must:

> consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 487 (emphasis in original) (footnotes omitted). Footnote seven in *Heck* anticipates at least some Fourth Amendment cases. It suggests that despite the general rule of *Heck,* a suit for damages arising from an unreasonable search could go forward as a § 1983 claim without invalidating a criminal prosecution, because of the independent source or inevitable discovery doctrines. In *Gonzalez*, we saw two implications in the footnote: "(i) a claim based on an unlawful search or arrest may be brought immediately,

because a violation of the fourth amendment does not necessarily impugn the validity of a conviction—the evidence may be properly admitted anyway, or it may be excluded and the defendant convicted on other evidence—and (ii) a claim of damages based on the injury of being convicted is impermissible until the conviction has been overturned." 133 F.3d at 553 (internal quotation marks omitted).

In *Booker v. Ward,* we interpreted *Heck* to allow a false arrest claim to go forward before the defendant's conviction was invalidated:

> [A] wrongful arrest claim, like a number of other Fourth Amendment claims, does not inevitably undermine a conviction; one can have a successful wrongful arrest claim and still have a perfectly valid conviction. Although in this case the Illinois Appellate Court's conclusion that Booker's confession was the inadmissible product of an unlawful arrest ultimately resulted in the dismissal of murder charges against Booker, in many cases, the prosecutor will have other witnesses or other evidence that will support a retrial.

94 F.3d at 1056 (citations omitted). The approach that the court took looked to the legal nature of the wrongful arrest claim, rather than to the specific facts of the case.

The *Gauger* opinion, in contrast, rejects an across-the-board approach to Fourth Amendment claims in favor of a case-by-case examination under which at least some false arrest claims would not accrue until after the conviction was invalidated:

> It might be argued that Gauger could have sued right after his arrest, even if he might also have waited until his criminal conviction was thrown out. But we do not think that such a conclusion would be consistent with *Heck*. For he could not knock out the arrest

without also (by virtue of *Wong Sun* [*v. United States*, 371 U.S. 471 (1963)]) invalidating the use in evidence of his admissions, without which, as we have said, he could not be convicted. *Heck*, to repeat, says that a criminal defendant can't sue for damages for violation of his civil rights, if the ground of his suit is inconsistent with his conviction having been constitutional, until he gets the conviction thrown out.

349 F.3d at 362. See also *Wiley*, 361 F.3d at 997-98.

In our view, although it is conceivable that there are factual differences among Booker's, Gauger's, and Wallace's cases, the distinctions are unimportant in the end. In Gauger's case, the police suspected Gauger of murdering his parents. 349 F.3d at 356. They brought him in for questioning and Gauger made several incriminating statements that, according to his version of the interrogation, were stated as hypotheticals. *Id.* at 357. Gauger was convicted and sentenced to death. On appeal, the Illinois Appellate Court determined that his statements were inadmissable as the product of an unlawful arrest. *Id.* The court ordered a new trial, but the state never retried him and the charges were dropped after two members of the Outlaws motorcycle gang confessed killing Gauger's parents. *Id.* at 358. The resemblance to Wallace's case is plain.

It is true that in Booker's case, as in Wallace's, the state appellate court first remanded for an attenuation hearing before ordering a new trial. See *Booker v. Ward*, 94 F.3d at 1054. The result of the attenuation hearing was a conclusion that the confession was sufficiently attenuated from the defendant's unlawful arrest, but the Illinois Appellate Court reversed. *Id.* Just as in Wallace's case, at this point the prosecution filed a motion for a *nolle prosequi*, and the court dropped the charges against Booker. *Id.* It is telling that in both Booker's and Wallace's cases, the state appellate court formally decided that the defendant's

criminal prosecution could continue even though the arrests were unlawful. Only the pragmatic judgment of the prosecutors, which could have rested on a conclusion that it was unlikely that any additional evidence existed, or on a lack of resources for further investigation, or any of a number of other factors, caused the cases to end. The rule we articulated in *Booker v. Ward* recognizes that *ex ante* it is not readily apparent which criminal cases might proceed despite the consequences of the successful Fourth Amendment challenge. This, in our view, argues against a rule that requires judges several years after the event to decide whether a particular Fourth Amendment challenge would have been the death knell of the prosecution.

Even if a clear rule is what is needed, we still need to decide between options (1) and (2) above: that is, between a rule saying that all claims of this type accrue at the time of injury, and a rule that they all accrue only when the criminal conviction has been set aside. The footnote in *Heck* to which we referred earlier persuades us that the Supreme Court did not contemplate the second rule, as it took care to suggest that the statute of limitations should begin running on at least some claims at the time of the original injury. Although the Court refrained from holding that all Fourth Amendment claims accrue immediately, it had no need to reach that issue in *Heck*. We conclude that the approach taken by *Booker v. Ward*, while an arguable extension of *Heck*, is an extension that is justifiable in light of the policies behind both the statute of limitations and the need to avoid unnecessary interference with the outcomes of criminal proceedings.

To the extent, therefore, that *Gauger* eschews a clear rule for false arrest claims in favor of an evaluation of the evidence, we disapprove its approach and instead reaffirm our holding in *Booker v. Ward* that a "§ 1983 unlawful arrest claim . . . accrue[s] on the day of [ ] arrest." *Id.* at 1056-57. Individuals and attorneys who wish to preserve a

claim for false arrest or similar Fourth Amendment violations should file their civil rights action at the time of arrest. It will still be possible, of course, for a district court to stay any such action until the criminal proceedings are concluded, should it conclude in its discretion that a stay would be useful. We note as well that we are addressing only the question of accrual; other doctrines, such as equitable tolling, may also affect the time in which a particular suit may be brought. See *Heck*, 512 U.S. at 489 (reserving judgment on whether equitable tolling applies in this context).

One additional qualification is necessary, which in our view answers the concerns expressed in the dissent. *Heck* itself recognized that it is possible for a § 1983 claim based on false arrest or a similar Fourth Amendment violation "necessarily [to] imply the invalidity of [a plaintiff's] conviction or sentence," *Heck*, 512 U.S. at 486 n.6, 487 (example of plaintiff convicted of resisting arrest who challenges legality of arrest). The case to which the Court pointed, however, is one in which the fact of a Fourth Amendment violation is an element of the claim. In that relatively uncommon set of cases, there is an independent reason to insist that a plaintiff wait to sue until the criminal conviction has been set aside; if she does not, the possibility of inconsistent rulings on the validity of the arrest is too great. Our ruling addresses the normal run of cases, in which the Fourth Amendment violation affects only the evidence that might or might not be presented to the trier of fact. In those instances, we are convinced that a clear accrual rule is superior to a case-by-case approach.

As the parties have noted, the question of the proper rule for accrual is an issue that has divided our sister circuits. Although their reasoning varies, the Second, Fourth, Fifth, Sixth, and Ninth Circuits have held that false arrest claims that would undermine the defendant's

conviction cannot be brought until the conviction is nullified. See *Harvey*, 210 F.3d at 1015 (acknowledging circuit split and holding flatly that "a § 1983 action alleging illegal search and seizure of evidence upon which criminal charges are based does not accrue until the criminal charges have been dismissed or the conviction has been overturned"); *Covington*, 171 F.3d at 124; *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 399 (6th Cir. 1999) (explicitly rejecting suggestion that § 1983 illegal search claims accrue at the time of injury, since such a rule would "misdirect the criminal defendant" from focusing on "mounting a viable defense to the charges against him"); *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998) (holding that success on false arrest claim would "necessarily imply" that conviction for disturbing the peace was invalid as not based on probable cause); *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996) (*Heck* bars civil rights claims "when a § 1983 plaintiff's success on a claim that a warrantless arrest was not supported by probable cause necessarily would implicate the validity of the plaintiff's conviction or sentence"); *Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995) (stating that "a claim of unlawful arrest, standing alone, does not necessarily implicate the validity of a criminal prosecution following the arrest," but staying the civil action until the criminal prosecution was completed).

The First, Third, Eighth, Tenth, and Eleventh Circuits have held that false arrest claims accrue at the time of the arrest. *Nieves v. McSweeney*, 241 F.3d 46, 52-53, 52 n.4 (1st Cir. 2001) (stating that "it is pellucid that all claims based on the officers' physical abuse or arrest of the appellants accrued at the time that those events occurred . . . because the appellants had ample reason to know of the injury then and there," and characterizing as "rare and exotic" the "circumstances in which a section 1983 claim based on a warrantless arrest will not accrue at the time of the ar-

rest"); *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 558, 559 n.4 (10th Cir. 1999) ("We generally disagree with the holdings in [*Covington* and *Mackey*] because they run counter to *Heck*'s explanation that use of illegally obtained evidence does not, for a variety of reasons, necessarily imply an unlawful conviction."); *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998) (finding § 1983 false arrest claim not barred by *Heck*); *Simmons v. O'Brien*, 77 F.3d 1093, 1095 (8th Cir. 1996) (finding § 1983 coerced confession claim not barred by *Heck*); *Datz v. Kilgore*, 51 F.3d 252, 253 n.1 (11th Cir. 1995) (per curiam) (finding § 1983 illegal search claim not barred by *Heck*). By aligning ourselves with one side of this debate, we do not break any new ground.

### B.  False Confession Claim

Wallace also asserts a "false confession" claim that he claims is actionable under the Fourth Amendment, relying on the following language in *Gauger*:

> [Gauger's] incarceration resulted from the combination of a false arrest with (if his testimony is believed) a false account of his interrogation. If his testimony is believed, therefore, the seizure of his person was from the beginning to the end of his incarceration unreasonable, and shouldn't that bring the allegedly fraudulent account of his interrogation under the Fourth Amendment?

349 F.3d 360. In support of his claim, Wallace tries to distinguish a "continuing Fourth Amendment violation" from the "continuing seizure" theory discussed in Justice Ginsburg's concurring opinion in *Albright v. Oliver*, 510 U.S. 266 (1994). See *id.* at 279 (Ginsburg, J., concurring). His efforts are necessary, at least in this court, because we have already rejected a "continuing seizure" theory in the Fourth Amendment context. See *McCullah v. Gadert*,

344 F.3d 655, 661 (7th Cir. 2003) (citing *Reed v. City of Chicago*, 77 F.3d 1049, 1052 n.3 (7th Cir. 1996)). Nonetheless, we find them unavailing. Wallace tries to find some support for it in *Chavez v. Martinez,* 538 U.S. 760 (2003), but as we read that case it dealt only with the Fifth Amendment and the due process clauses. We reject the idea of a stand-alone "false confession" claim based on the Fourth Amendment, rather than the Fifth Amendment or the due process clauses.

### C.  Fourteenth Amendment Claim

Finally, Wallace tries characterizing his false confession claim as a violation of his Fourteenth Amendment right to a fair trial. Wallace contends that our decision in *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001), allows for a "false confession" claim as a due process violation. In *Newsome*, we affirmed the district court's decision to deny qualified immunity to two officers who had withheld exculpatory evidence from the defendant. *Id.* at 753. The reason was because, under *Brady v. Maryland*, 373 U.S. 83 (1963), officers who withhold such material violate a defendant's right to a fair trial. 256 F.3d at 752. See also *Ienco v. City of Chicago*, 286 F.3d 994, 999 (7th Cir. 2002) (allowing plaintiff to amend complaint to assert due process claim against police officers who withheld evidence); *Jones v. Chicago*, 856 F.2d 985 (7th Cir. 1988) (allowing claim against officers who allegedly fabricated evidence and concealed exculpatory evidence to go forward).

As these brief summaries demonstrate, *Newsome*, *Ienco,* and similar cases do not stand for the proposition that there is a free-standing due process claim whenever unfair interrogation tactics (short of those that may shock the conscience and thereby implicate the Supreme Court's substantive due process rulings) are used to obtain a confession. Instead, they are grounded in tradi-

tional notions of what is required for a fair trial, including the *Brady* right to be given exculpatory material. In the end, all Wallace has is a complaint about the arrest and the subsequent confession, and that is the claim we have found to be time-barred. He cannot escape that result merely by re-characterizing the claim under a different part of the Constitution.

## III

The City argued in the alternative that Wallace was not entitled to bring his suit under the *Heck* rule because the state court proceedings did not conclude in his favor. It reasons that the state *trial* court found that his confession was voluntary; that this finding was not disturbed as a matter of Illinois law when the state appellate court reversed and remanded the trial court's judgment; and that Wallace cannot prevail in his § 1983 action if this central fact is taken as established. Because we have resolved this appeal in favor of all three defendants on the statute of limitations ground, we decline to reach the City's alternative argument. It depends centrally on the intricacies of the law of collateral estoppel in Illinois, which is a topic on which all we could do in any event is to follow the Illinois courts to the best of our ability.

The judgment of the district court is AFFIRMED.

POSNER, *Circuit Judge*, dissenting from denial of rehearing en banc.  The panel decision creates an intercircuit conflict on a recurrent issue: when does a claim for damages arising out of a false arrest or other search or seizure

forbidden by the Fourth Amendment, or a coerced confession forbidden by the due process clause of the Fifth Amendment, accrue, when the fruits of the search or the confession were introduced in the claimant's criminal trial, and he was convicted? The panel holds that, except in the rare case in which a violation of the Fourth Amendment is an element of the crime with which the defendant is charged, it always accrues at the time of the arrest, search, or confession. Every other case to address the issue, including our own *Gauger v. Hendle*, 349 F.3d 354 (7th Cir. 2003), holds that it *usually* accrues then, but not if the Fourth or Fifth Amendment claim, if valid, would upset the conviction. If it would, the claim does not accrue unless and until the conviction is vacated. In other words, a civil rights suit is not a permissible vehicle for a collateral attack on a conviction.

That is the holding of *Heck v. Humphrey*, 512 U.S. 477 (1994). The Court said that the district court must "consider whether a judgment [in the civil rights suit] in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id*. at 486-87. The Court gave the following example of "a § 1983 action that does not seek damages directly attributable to conviction or confinement but whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful": "A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful* arrest. . . . He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted. Regardless of the state law concern-

ing res judicata, . . . the § 1983 action will not lie." 512 U.S. at 486 n. 6 (emphasis in original). Faced with this flat statement, the panel carves the exception to its new rule that I mentioned in the first paragraph but does not give a reason for limiting the Court's exception to the particular illustration that the Court gave. The panel says only: "we are convinced that a clear accrual rule is superior to a case-by-case approach." It does not explain the source of its conviction.

Its accrual rule is not "clear," as I'll point out; it is also inconsistent with the principles of accrual. A suit cannot be filed—the claim on which it is based cannot have accrued—at a time when, because a condition precedent to suit has not been satisfied, the suit must be dismissed. The panel holds that the suit must be filed within the limitations period for section 1983 suits (usually two years) from the date of the arrest, search, or, as in this case, confession, even if at the end of the two years the plaintiff's conviction has not been vacated and even if the only evidence of his guilt presented at his criminal trial was the challenged evidence or confession. This is so, the panel holds, even though, to quote *Heck*, a judgment in the plaintiff's favor in the civil suit "would necessarily imply the invalidity of his conviction" because it would wipe out all of the evidence against him.

And if the plaintiff waits to sue until his conviction is vacated, he will not have the full statutory period within which to sue because he will be able to avoid dismissal only by appealing to the doctrine of equitable tolling. (That's assuming equitable tolling is available in *Heck* cases, a question the panel leaves open.) Equitable tolling permits a plaintiff to delay suing beyond the statutory limitations period if he is unable despite all due diligence to sue within the period; but as soon as he is able to sue he must. He is denied the benefit of the full statutory period. *Unterreiner v. Volkswagen of America, Inc.*, 8 F.3d 1206, 1213 (7th Cir.

1993); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 452-53 (7th Cir. 1990).

So the panel's decision puts the squeeze on these plaintiffs, contrary to normal principles of accrual, which do not force you—in fact do not allow you—to sue before you have a claim. If you have been convicted and success on your civil rights claim would undermine your conviction, you have no civil rights claim unless and until you get the conviction set aside. If the search turned up no evidence, or the confession was excluded at the criminal trial, or the other evidence of guilt was overwhelming, the claim does not challenge the conviction and so it accrues at the time of the search. But that is not every case.

The proper response is to adopt a presumption against the unlikely result. (The panel does not discuss that alternative.) The presumption would be that even if the plaintiff's Fourth or Fifth Amendment defense had prevailed in the criminal proceeding against him, he still would have been convicted, either because the violation had not produced evidence used against him in that proceeding or because, though it had, there was plenty of other evidence to convict him. The presumption would be rebutted if, for example, the only evidence of his guilt was evidence seized in a search that he challenges in his section 1983 suit. This is not a hypothetical case; it is our twin *Okoro* cases, *Okoro v. Bohman*, 164 F.3d 1059, 1061 (7th Cir. 1999), and *Okoro v. Callaghan*, 324 F.3d 488 (7th Cir. 2003). The plaintiff, who had been convicted of a drug offense on the basis of heroin found during a search of his home, brought a federal civil rights suit in which he claimed that he had offered to sell the police jewels (which he claimed they stole from him in response to his offer), not drugs. His conviction was never reversed or otherwise nullified. We held the suit barred by *Heck* because if he was believed he should not have been convicted, since the heroin was essential to the conviction; and so his Fourth Amendment suit for the allegedly stolen

jewelry was barred. *Hudson v. Hughes*, 98 F.3d 868, 872 (5th Cir. 1996), is a similar case with the same result.

Another clear case is *Gauger* itself. His conviction, we pointed out, "rested crucially on the statements that he made to the police when he was questioned after being arrested. Earlier we said that he might well have been prosecuted even if his version of the interrogation had been accepted, because his version was incriminating though not as much so as the prosecutors' version. With no statement at all in evidence, however, he could not have been convicted of guilt of his parents' murder beyond a reasonable doubt; the other evidence—the lack of forced entry or signs of struggle, for example—was probative merely as corroboration of his statements construed as a confession or at least as damaging admissions. So when he showed that the statements were the product of a false arrest and hence were inadmissible at his criminal trial, he successfully impugned the validity of his conviction, as the state implicitly conceded when it dropped the charges against him following the reversal of his conviction." 349 F.3d at 361-62.

There will be tough borderline cases, but the tough cases are not resolved by the decision today. They will simply be fought out as equitable-tolling cases rather than accrual cases—if equitable tolling is available, a question on which the panel, as I noted, reserves judgment: so much for the panel's having adopted a "clear rule." If equitable tolling is unavailable, then Fourth and Fifth Amendment claimants will automatically file within the statutory period dated from the search—and then plead with the district court to disobey *Heck* and not dismiss the suit, even if it is not yet ripe because the conviction has not been set aside and its validity depends on the validity of the search. As the Sixth Circuit sensibly observed in *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 399 (6th Cir. 1999), "just as a convicted prisoner must first seek relief through habeas

corpus before his § 1983 action can accrue, so too should the defendant in a criminal proceeding focus on his primary mode of relief—mounting a viable defense to the charges against him—before turning to a civil claim under § 1983." The panel does not discuss that observation.

The panel denies that it is creating an intercircuit conflict. It says that there is already a conflict and it is just taking sides. Citing five cases, the panel states flatfootedly: "The First, Third, Eighth, Tenth, and Eleventh Circuits have held that false arrest claims accrue at the time of the arrest . . . . By aligning ourselves with one side of this debate, we do not break any new ground." That is incorrect. None of those cases hold that such claims *always* accrue at the time of arrest. All they hold is that *normally* a Fourth Amendment claim accrues them. Not one of them even *says* (as distinct from holds) that it always does, and two of the five explicitly allow for later accrual in exceptional cases.

The five cases are *Nieves v. Sweeney*, 241 F.3d 46, 52-53 (1st Cir. 2001); *Beck v. City of Muskogee Police Dept.*, 195 F.3d 553, 558 (10th Cir. 1999); *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998); *Simmons v. O'Brien*, 77 F.3d 1093, 1097 (8th Cir. 1996), and *Datz v. Kilgore*, 51 F.3d 252, 253 n. 1 (11th Cir. 1995) (per curiam). *Nieves* acknowledges that there may be cases "in which a section 1983 claim based on a warrantless arrest will not accrue at the time of the arrest." 241 F.3d at 52 n. 4. Even the passage that the panel quotes from *Nieves* acknowledges that a section 1983 claim does not always accrue at the time of arrest. *Id*. *Beck* also acknowledges such a possibility. 195 F.3d at 558-59. In *Montgomery*, the plaintiff's claims, which were for false arrest and false imprisonment, were unrelated to the outcome of the criminal prosecution against her. Her "claim for false arrest . . . covers damages only for the time of detention until the issuance of process or arraignment, and not more. In addition, Montgomery's section 1983 false imprisonment claim relates only to her arrest and the

few hours she was detained immediately following her arrest. Montgomery therefore reasonably knew of the injuries that form the basis of these 1983 claims on the night of her arrest." 159 F.3d at 126 (citations omitted).

In *Datz*, a search case, the court held that the plaintiff did not have to wait until the outcome of his criminal case to bring his civil case because it was uncertain whether a ruling in the civil case that Datz's search had been illegal would be inconsistent with his criminal conviction, for "even if the pertinent search did violate the Federal Constitution, Datz' conviction might still be valid considering such doctrines as inevitable discovery, independent source, and harmless error." 51 F.3d at 253 n. 1. Since Datz was convicted of being a felon in possession of a firearm, and the firearm was found in the search, it might seem that his conviction could not coexist with invalidating the search. But as the state court that upheld his conviction noted, "ammunition for the weapon also was found in two locations in appellant's house. The police evidence custodian testified appellant contacted him numerous times, by phone and in person, seeking return of 'his AR-15 rifle.'" *Datz v. State*, 436 S.E.2d 506, 509 (Ga. App. 1993). If there is untainted evidence here, the panel's result might well be correct, but there is no discussion of the other evidence in its opinion. In *Simmons* the only issue discussed is whether admission of a coerced confession can be a harmless error; as far as appears, no issue was made of whether the admission of the confession had been harmless. 77 F.3d at 1094-95. The panel does not discuss *Montgomery*, *Datz*, or *Simmons*; its characterization of them (e.g., "finding § 1983 coerced confession claim not barred by *Heck*") is consistent with the principle that the claim *usually* accrues later.

The cases that the panel acknowledges are in conflict with its accrual rule are, besides *Gauger*, *Harvey v. Waldron*, 210 F.3d 1008, 1015 (9th Cir. 2000); *Shamaeizadeh v. Cunigan*,

*supra*, 182 F.3d at 399; *Covington v. City of New York*, 171 F.3d 117, 124 (2d Cir. 1999); *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998); *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996), and *Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995). The list is incomplete. Mysteriously omitted, without comment, are *Uboh v. Reno*, 141 F.3d 1000, 1006-08 (11th Cir. 1998), and *Woods v. Candela*, 47 F.3d 545, 546 (2d Cir. 1995) (per curiam). *Nieves*, at least, must be added to the list along with *Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 4 (1st Cir. 1995), cited in *Nieves*, as well as our decision in *Booker v. Ward*, 94 F.3d 1054, 1056 (7th Cir. 1996), where we said, examining the proceedings in the Illinois courts, "that success on Booker's unlawful arrest claim would not necessarily undermine the validity of his conviction." That's the test, all right. And note that *Beck*, one of the cases the panel cites for its rule, expressly declined to reject *Covington*. 195 F.3d at 559 n. 4.

The panel may have been misled by the reference in *Harvey v. Waldron*, *supra*, 210 F.3d at 1015, to "a split in the circuits." The court in *Harvey* mischaracterizes the approach of courts (including itself!) that reject the approach taken by the panel today. It describes them as holding that a Fourth or Fifth Amendment claim *never* accrues until and unless the conviction is vacated. Those courts hold only that such a claim *sometimes* doesn't accrue until then, for example if there is no other evidence to support the conviction besides evidence claimed to have been obtained illegally. So in *Harvey* the court went on to satisfy itself that the evidence alleged to have been illegally seized was essential to Harvey's conviction. *Id*. at 1015-16.

The panel is right that there are two groups of cases. But they are consistent. One holds that a Fourth or Fifth Amendment claim accrues at the time of arrest, assuming the conviction does not depend on the evidence alleged to

have been illegally seized. The other holds that the claim does not accrue then if the conviction does depend on that evidence.

I count 12 cases to 0 against the panel's approach, with the other three cases (*Montgomery*, *Simmons*, and *Datz*) noncommittal but consistent with the 12. So one-sided a score should give us pause. If there is a compelling practical reason for flouting conventional statute of limitations principles, forging a lonely path, and creating more work for the Supreme Court, which now faces an intercircuit conflict on a recurrent issue, the panel has not explained what it might be.

No. 04-3949

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*